### STUDWELL *against* RITCH.

Though by the *English* common law, it is the duty of the owner of cattle to restrain them, and if he suffers them to trespass upon the lands of another, he is generally liable in damages, whether those lands were, or were not, enclosed, by a sufficient fence; yet in this state, a different rule has been adopted, and the owners of lands are obliged to enclose them, by a lawful fence, or they can maintain no action for a trespass done thereon, by the cattle of another. Therefore, where it appeared from the pleadings in an action of trespass for damage done to the plaintiff's land, by the defendant's cattle, that the injury complained of, resulted from the want of a sufficient fence between the adjoining lands of the plaintiff and defendant; that it was the duty of each of the owners of these lands, to make and maintain one half of the divisional fence; and that the plaintiff had never made his part, or taken any measures for the erection of a divisional fence; it was held, that the plaintiff was not entitled to a recovery.   [One judge dissenting.]

THIS was an action of trespass for damage done to the plaintiff's close, by the defendant's cattle.

The defendant pleaded in bar, that the close of the plaintiff, in which the injury complained of was done, lies adjoining a tract of land owned in fee by the heirs of *Benjamin Clason*; that it is, and at all times has been, the duty of the plaintiff and those who owned his land, and of those who owned said adjoining tract, to make and maintain equally, such divisional fence as should be made, and should be necessary, between said two tracts, *viz.* of the plaintiff, and those who before him owned and occupied his tract, to make and maintain one half of such fence, and of those who own, and who have owned

and occupied, said other tract, to make and maintain the other half of such fence, as should be necessary between said tracts for the enclosure of each in severalty from the other : that during all the time in the plaintiff's declaration mentioned, the defendant was in the rightful and lawful occupation and possession of the last-mentioned tract, by the consent and permission of the heirs of said *Clason,* with right to take and have to his own proper use, all the pasturage and proceeds thereof : that at said time, there was, for a small part of the way, on the dividing line between said tracts an insufficient fence, which had been erected by said *Clason,* but for the remainder of the line between said tracts, there was not then, nor had there ever been, any divisional fence dividing said tracts from each other, except said insufficient fence for part of the way : that neither the plaintiff, nor any owner before him of his tract, had ever built one half, nor any other portion, of a divisional fence between said two tracts ; nor had the dividing line between said two tracts, at any time before the commencement of this action, been, by the respective owners thereof, nor by the plaintiff and defendant, nor in any way, divided for the purpose of such divisional fence ; nor, except such insufficient fence, had any measures ever been taken, by the respective owners of said tracts, or either of them, for the division of said line, or the erection of a divisional fence between said tracts ; nor had either of said tracts ever been enclosed in severalty from the other : that by reason of these facts, cattle lawfully placed, for pasturage, or other purpose, on either of said tracts, could at all times pass from such tract into the other, without obstruction : that the cattle of the defendant in the declaration mentioned, were by him placed, as he had good right to do, upon said tract in his possession, for the pasturage thereof ; and such cattle, being so lawfully upon said tract, did, without the consent, knowledge or fault of the defendant, through the want and insufficiency of such fence as aforesaid, escape therefrom, and immediately thence enter upon said tract of the plaintiff, and did a little depasture, eat up and trample upon and destroy the grass of the plaintiff, doing him no damage other than such as resulted from, and was incidental to the acts aforesaid ; which are the same supposed trespasses, &c.

To this plea there was a general demurrer ; and the coun-

ty court, before which the cause was brought, adjudged the plea sufficient, and rendered judgment for the defendant to recover his costs. The plaintiff thereupon brought a writ of error in the superior court; which was reserved for the consideration and advice of this court.

*Booth* and *Ferris,* for the plaintiff in error, contended, 1. That at common law, every unwarrantable entry upon the land of another, is a trespass, whether the land be enclosed or not ; and a person is equally answerable for the trespass of his cattle, as of himself. 3 *Bla. Com.* 209. 211. *Wells* v. *Howell,* 19 *Johns. Rep.* 385.

2. That where the common law is not altered by statute, the rights of the parties are to be determined by it.

3. That our statute regarding fences, is in affirmance of the common law. *Stat. tit.* 33. *p.* 213. & seq. *Rust* v. *Low* & al. 6 *Mass. Rep.* 90.

4. That if the defendant desire a fence, he is not without remedy. See 1st and 5th sections of the statute. Until he has taken the steps prescribed by statute, there is no hardship in yielding obedience to the reasonable and salutary maxim, *Sic utere tuo ut alienum non lædas.*

*Hawley,* for the defendant, insisted, 1. That the *English* common law regarding fences, is not applicable here. It was entirely unadapted to our condition, in the early times of the government; and the whole subject was provided for, by statutory enactment, which entirely repeals the common law, and which has been continued to the present time. See *Stat. tit. Fences, p.* 24. (ed. 1672.) also *tit. Common Fields and Fences, pp.* 10; 11. (same ed.) continued through every subsequent edition to the present time. 1 *Sw. Dig.* 525.

2. That by the law of this state, there can be no recovery by the owner of the land, where no measures have been taken for its protection by fence. *Vide supra.*

3. That as the common law on this subject consists of a single principle, *viz.* that the owner of cattle shall restrain them—so our law consists of a single principle, *viz.* the owner of land shall secure it by fencing.

4. That our statutes exhaust the subject, providing for every case that can arise, and leaving nothing for the *English* common law to act upon. *Stat. tit.* 33. *s.* 1. 2. 21. *tit.* 78. *s.* 3. 7.

WAITE, J. The question submitted to our consideration is, whether the facts set forth in the defendant's plea, are sufficient to bar the plaintiff's action.

It is very clear, that according to the *English* common law, the defendant's plea would be insufficient. It is there made the duty of every man to take care of his cattle ; and if he suffers them to trespass upon the lands of others, he is generally liable for the damages, whether those lands were, or were not, enclosed by a sufficient fence. *Com. Dig.tit. Droit. M.* 2. *Dyer*, 372.

But a majority of the court are of opinion, that such is not the law of *Connecticut ;* that here a different rule has been established. Judge *Swift*, after stating the *English* law upon this subject, says, " but we have adopted a different rule ; and the owners of lands are obliged to enclose them, by a lawful fence, or they can maintain no action for a trespass done thereon by cattle." 1 *Sw. Dig.* 525. It is true, he cites no judicial determination in support of this position ; but his long experience at the bar, and upon the bench of the highest courts in this state, entitles his opinion concerning *our peculiar laws* to great respect. And from a careful examination of our statutes, in relation to this subject, traced from the earliest periods in our history, we are satisfied, that his opinion is fully sustained by them. Thus, as early as the edition of our statutes published in 1672, we find a provision of this kind : " It is ordered by the authority of this court, that all the inhabitants of this jurisdiction, shall make and maintain sufficient fence and fences to secure their particular fields and enclosures, against all sorts of cattle, (unruly cattle only excepted,) and whatever damage is done by them through the insufficiency of the fence in such enclosures, (except as before excepted) it shall not be recoverable by law."

This law naturally grew out of the situation of the country, at the time of the first settlement of this state. It was more convenient for our ancestors to enclose their cultivated fields than their pastures. The cattle were suffered to roam over the uninclosed lands, and obtain a subsistence wherever they could. The lands which were ploughed and planted, were enclosed by fences. Hence, by our statutes, it is still provided, "that the proprietors of lands shall make and maintain sufficient fence or fences to secure their particular fields or

*Fairfield,*
*June, 1841.*

Studwell
*v.*
Ritch.

enclosures ;" that " when adjoining proprietors enclose their lands in severalty, each shall make and maintain one half of the divisional fence ;" and " all damages done by cattle, horses, sheep or swine, when the fence is sufficient, shall be paid by the owners of them ; but if the fence is defective, then by the owners of the fence." *Stat. tit.* 33. *s.* 1. 2. 21. And again, " no person shall be entitled to a recovery for damages done in his enclosure through the insufficiency of the fence," unless in certain cases particularly specified. *Stat. tit.* 78. *s.* 7.

These laws, and various others to be found in our statutes, have wrought a great change of the common law of this state, and, in our opinion, make it the duty of every man to enclose his lands by a sufficient fence, or at least to do all that the law requires of him towards fencing his land, before he can maintain an action for a trespass thereon by cattle, except in the few cases specified in the statute.

In this case, it is conceded, by the pleadings, that the injury complained of, resulted from the want of a sufficient fence between the adjoining lands of the plaintiff and defendant; that it was the duty of each of the owners of these lands, to make and maintain one half of the divisional fence ; and that the plaintiff had never made his part. Now if, according to the *English* rule, it was the duty of the defendant to take care of his cattle, his plea could not prevail. But if, according to our law, it was the duty of the plaintiff to make his part of the fence, before he could recover damages, then the facts stated in the plea, and admitted by the demurrer, shew, that he is not entitled to recover.

But we have been referred to the case of *Rust* v. *Low,* 6 *Mass. Rep.* 90. as recognizing the doctrine contended for by the plaintiff. The decision in that case, turned upon the construction given to the statutes of the state of *Massachusetts.* And whatever may be said as to the correctness of that decision, as applicable to their laws, we are not satisfied, that, upon a fair construction of our statutes, such construction ought to be given to ours, or that the plaintiff is entitled to a decision in his favour.

Our advice, therefore, is, that the judgment of the county court be affirmed.

In this opinion, WILLIAMS, Ch. J. and CHURCH and STORRS, Js., concurred.

SHERMAN, J.  The plaintiff and defendant own adjoining lands in the same enclosure, but not separated by a fence. The question is, whether, if one put cattle on his land and they stray upon that of the other, he is a trespasser.  This the defendant admits he has done.

*Fairfield,*
June, 1841.

Studwell
*v.*
Ritch.

It is admitted, that by the common law of *England* relating to trespasses, the defendant, upon the facts presented on this record, would be liable in damages; but it is said, that the law on that point was never applicable to our circumstances, and has been repealed, by existing statutes, if it was ever adopted in this state.

It is true, that our townships, at their first settlement, being unenclosed and uncultivated lands, were occupied, by the proprietors, as one vast common.  In order to enjoy it in that form, which was indispensable, we find it was provided among the earliest of our legislative enactments, that persons occupying particular enclosures, should secure them against trespasses from unruly cattle going on the common. The town proprietors, from time to time, made allotments to each other in severalty, by which these particular enclosures were multiplied, as the new settlements progressed.  Where great numbers of them were contiguous, the owners were permitted to enclose them in one common field, and statutes were made for their regulation.  But when, as in the case in question, they composed no part of a common field, the only peculiarity in the state of the country affecting their mutual rights and obligations, was that which required that they should protect themselves against cattle going at large on the town common, as already stated.  As to protecting their lands from the trespasses of each other, there was no reason for superseding the common law.  We are not, therefore, to presume, that it was the intention of any statute, unless clearly expressed, to repeal the common law, in this respect.  If any ancient statute has been more extensive in its provisions, in regard to this point, than those now in force, of which no instance has been shown, its repeal, as in all other cases, has so far restored the common law.  We have no provisions in our statutes, which exclude the law as laid down by Ch. J. *Parsons,* in *Kent* v. *Low* & al. 6 *Mass. Rep.* 101., which was a similar case.  "It does not appear," says he, " that this fence has ever been divided ; and therefore, each party, at his peril,

*Fairfield,*
June, 1841.

Studwell
*v.*
Ritch.

was bound to keep his cattle on his own land." To prove that the plaintiff is bound to fence against the defendant's cattle, we have been referred to the 1st and 21st sections of the act concerning fences and common fields, and to the 3rd and 7th sections of the act concerning pounds. Before considering these, it is proper to remark more particularly, that our statutes contemplate three different conditions of landed property. 1. "The common," which is the open lands of the township, owned by the town proprietors in common, and undivided. 2. "Common fields," which consist of contiguous lots owned in severalty, but surrounded by a common fence; the proprietors of which, were invested with peculiar power and privileges, resembling those of a corporation; by which the majority, in a field meeting, were enabled to choose officers, and adopt rules for the regulation of their common occupancy. 3. "Particular enclosures," in which the lands of one or more individuals, owning in severalty, were fenced off from the town common. It is to the exterior fence of this last description of lands, that the first section of the statute concerning fences and common fields, refers. It enacts, "That the proprietors of lands, shall make and maintain sufficient fence or fences, to secure their *particular fields and enclosures.*" But the line now in question, between the plaintiff and defendant, is what is called a *divisional line*, and is not of this description. This is evident from the provisions of the next, or 2nd section, which directs, that " when adjoining proprietors enclose their land in severalty, each shall make and maintain one half of the divisional fence." That is this case. The plaintiff and defendant are equally bound to maintain a fence on this line; but until a division has been made, pursuant to the provisions of the 4th section of this act, neither party severally owns, or is bound to fence, any part of it. The residue of this statute, from the 9th section, inclusive, to the end, relates to common fields, and not to particular enclosures. The 21st section, therefore, has no relevancy to this case, as will be evident, by noticing its connexion with those which precede and follow it. But its language renders its application to the case impossible. The words are : "All damages done by cattle, horses, sheep or swine, when the fence is sufficient, shall be paid by the owners of them; but if the fence is defective, then by the owners of the fence; but where the fence is de-

fective, the owners of the cattle shall pay the poundage before they are released from pound, and shall recover the same of the owner of the defective fence." It is sufficient to say, that this language can apply only to the case where there *is* no owner of a fence, or of a line on which some one is bound to maintain a fence. It would be absurd to cast the responsibility for the damages on that party who is bound to maintain the fence, when, from the nature of the case, it is admitted that there is no such party. But in the fence of a common field, of which many extend for miles, a defect may exist in the part allotted to a particular proprietor, which the hayward, who is a field officer, is not bound to search after. He impounds the cattle which have entered. He is entitled to his poundage. The law requires the owner of the cattle to pay it ; but very justly gives redress, both for the poundage and damage, against the owner of the defective fence, through whose negligence the whole injury has arisen.

The 3rd section of the act concerning pounds, provides, that " every person shall have right to impound horses, cattle &c. found doing damage on his land, enclosed by a sufficient and lawful fence." This is an *affirmative* enactment, and is not intended to *exclude* the right either of impounding or recovering damages by suit at law, where it is given by other provisions of the statute or common law. For instance, he may impound or recover damages, if his land is *not* so enclosed, if the defective fence belongs to the owner of the cattle, or they are " unruly," or suffered to " go on the common contrary to law," " or where part of the fence is deficient, and they enter through a sufficient fence ;" or where the trespass is " voluntary" on the part of the owner, &c. Indeed, we are first to ascertain whether the act done, is by law a trespass ; and if it is, this third section does not purport to divest the party injured, of any remedy which he might legally enforce.

But the 7th section is relied on as conclusive. It provides, that " no person shall be entitled to a recovery for damages done in his enclosure through the deficiency of his fence, unless such damages were done by swine, &c., that go at large on the common &c., or by unruly cattle &c." But the damages done the plaintiff, were not " through the deficiency of *his* fence ;" for he neither had, nor was bound to have, any fence on this divisional line, as has been already shown ; no

*Fairfield,*
*June, 1841.*

Studwell
*v.*
Ritch.

steps having been taken to subject him to that obligation, pursuant to the 4th section of the act concerning fences and common fields.

When it is said, that the whole common law regarding trespasses on land, has been repealed by statute, the assertion is very broad, and demands examination ; and as its proof, in a case to which the common law is applicable, must depend upon the statutes of the state, it is safer to examine and decide from them, than to rely upon the opinion of any author wholly unsupported by authority. But we have express authority the other way. The obligation of every man to take care of his own cattle still exists, where no change has been made by statute. This was decided in the case of *Russell* v. *Southworth*, 1 *Root* 269. That was an action of trespass, declaring that the defendant's cattle got into the plaintiff's enclosure, ate up his corn, grass, &c. The facts in the case were admitted. The lands of the plaintiff and defendant were divided, by a small river, called the *Nachauge*. " The plaintiff ploughed and mowed his side, and the defendant pastured on his. The river was no fence ; and it was impracticable to maintain a fence on the dividing line between them, and very difficult keeping a fence on the banks of the river. The defendant turned his cattle into his pasture, and they went across the river into the plaintiff's land, and ate his corn and grass." The jury, upon being returned to a second consideration, gave a verdict for the plaintiff, which the court approved. " The court," says the reporter, " in giving their reasons to the jury, agreed, that where a river, which is not navigable, divides between two adjoining proprietors, their lands meet in the middle of the river ; and when lands are so situated that a division fence cannot be maintained in the dividing line, it is a case not provided for in the statute, and must be governed by the principles of reason and justice ; *and he that keeps cattle, must so keep them, as to prevent their injuring the property of others.* The improvement of lands by ploughing and mowing, is of great public utility, and is therefore to be encouraged and protected ; and the defendant's turning his cattle on his own land, knowing of the situation, was a trespass upon the plaintiff." The court explicitly recognize the general principle, that the owner of cattle is responsible for a trespass where there is no fence, and even

where it was impossible for him to erect one on the dividing line—a difficulty which does not exist in this case. They explicitly reject the proposition so strenuously urged at the bar, that by the law of this state, every man must protect his own land, and adopt that of the common law, that, in the absence of any statutory regulation, "he that keeps cattle, must so keep them, as to prevent their injuring the property of others."

For these reasons, I would advise, that the judgment of the county court be reversed.