## Johnson *vs.* Wing.

The act of March 17, 1847, which provides that "no person shall·be entitled to recover any sum of money, in any action for damages done upon lands by any beast or beasts, unless in cases where by the by-laws of the proper town-ship, such beasts are prohibited from running at large, except in cases where such lands are enclosed by a fence of the same height and description, as is required by the provisions of sec. 1, chap. 18, of R. S. of 1846," was enacted only in reference to exterior fences. The exception in the act relates to beasts running at large, and to lands 'enclosed as distinguished from unenclosed or wild lands, and not to adjoining enclosures. *Held*, accordingly, that one of two owners of adjoining lands, who put cattle upon his own land, from which they entered upon the land of the other, (there being no partition fence,) was liable to an action therefore.

Chap. 125, Rev. Stat. 1846, giving a writ of replevin to one whose beasts are dis-trained or impounded, to obtain satisfaction for any damage alleged to have been done by them, provides for a special proceeding; and expressly nega-tives a remedy by replevin, in any other manner than is therein provided.

This case was reserved by the Circuit Judge of the county of Jackson, for the opinion of this Court, upon the following statement of the case and facts found by him:

This was an action of replevin, brought under the provis-ions of chapter 124 of the Revised Statutes, to recover the possession of one hundred and twenty-six sheep, which the said plaintiff alleges were unlawfully detained from him by the defendant, and said cause having been submitted to the Court, without a jury, on the proof and allegations of the respective parties, the Court finds the following facts, viz:

That the sheep in question belong to the plaintiff; that the parties own lands adjoining; that the sheep in question passed from the plaintiff's land on to the adjoining lands of the defendant, and did damage to the defendant's wheat, then standing and growing on the defendant's premises, to the amount of five dollars; that the defendant, while they were so on his premises, impounded them, and gave to the plaintiff the notice required by the statute; that the plaintiff immediately demanded the sheep; the defendant refused to deliver them up, and thereupon the plaintiff replevied them.

The Court further found, that prior to the time in which the above transaction occurred, the plaintiff dug a ditch on the line between the aforesaid lands of the respective parties, for the double purpose of draining the land and for a fence; that afterwards, upon request, the defendant paid for one-half of said ditch; that said ditch was not equal to a lawful fence, as prescribed by statute; that sheep could pass over said ditch without difficulty, and especially when the water was not high; that there was no division of said ditch or fence; that there was no agreement, express or implied, between the parties in reference to said ditch, that the same should or should not be considered a sufficient or insufficient fence, except what might be implied from the digging of the ditch by the plaintiff, and the payment of one-half by the defendant, as above stated. The Court certifies the case to the Supreme Court, for its opinion as to whether the plaintiff can recover upon the foregoing facts.

*A. Blair*, for plaintiff.

1. The sheep replevied belonged to the plaintiff, and were upon the adjoining lands of the defendant, through a defective division fence. The parties were both equally in fault in regard to the fence. The defendant could bring trespass or distress and the distress is only a substitute for the action. The plaintiff is not liable, if the damages were occasioned by the defendant's default in regard to the fence. (*R. S.* 1846, *ch.* 125, § 4; *Id. ch.* 18, § 98.) If the parties keep no division fence, they have no right of action.

2. Whatever may have been the rule under the old statute, the question is settled by the statute of 1847, (*Sess. Laws* 1847, *p.* 181,) which abolishes the distinction heretofore existing between division and outside fences. If a party does not enclose his field, he waives his right of action. That the owners of adjoining lots neglecting to maintain division

fences can maintain no action, was held in Studwell *vs.* Rich, 14 Conn. 292; Mooney *vs.* Maynard, 1 Verm. 470.

3. The facts evidenced a license by the parties to enter upon each others lands without being liable to action. They had manifestly agreed to do without a sufficient division fence.

4. The question that the writ of replevin should have been taken out under chap. 125, instead 124, does not arise. The questions reserved affect the merits only.

And if the question were now properly before the Court, there is nothing in it. The proceedings in either case are substantially the same. Chapter 125 authorizes the writ to issue in a case where the plaintiff cannot make the affidavit required by chap. 124; that is, where the distress is admitted to be legal, and he only seeks an assessment of damages. In this case, the plaintiff denied the legality of the distress, and that question is still open to contest upon a bill of exceptions. (*Pangburn* vs. *Patridge*, 7 *J. R.* 142; *Hale* vs. *Clark*, 19 *Wend.* 498.)

*Livermore & Wood*, for defendants.

1. The sheep were in the custody of the law and could not be replevied, unless the plaintiff made affidavit, "stating therein that the beasts, describing them, have been distrained or impounded, and detained by the defendant, and that the plaintiff therein is the owner." (*R. S.* 1846, *sec.* 19, *p.* 553.) The plaintiff has no right to the writ of replevin at common law when beasts are distrained, without making the particular affidavit. The statute denies the right to issue the writ without it, and where a negative is thus expressed the right does not exist. (*Chittenden* vs. *Wilson*, 5 *Cow.* 165.)

2. At common law, neither party was bound to fence, and each was bound to keep his beasts in his own close, or be liable to an action of trespass by the party injured, or have his beasts distrained. (3 *Kent*, 638; 1 *Cow.* 79; 19 *J. R.* 385;

---

---

3 *Bl. Com.* 209; 5 *Greenl.* 357; 18 *Wend.* 221; 16 *Mass.* 33; 4 *N. H.* 36; 7 *Ib.* 518; 6 *Mass.* 94; 4 *Met.* 589.)

3. The statute does not change these rights under the facts in this case. At common law, persons were not bound to fence. There is an exception to this rule: "Prescription to fence is allowed at common law as resulting from an original grant or agreement, the evidence of which is lost by lapse of time." (6 *Mass.* 95.) No such "prescription" exists in this State, certainly not in this case. An assignment pursuant to our statute would doubtless create the same liabilities between the owners of an adjoining close as prescription. In this case, neither party availed himself of the statute for dividing this ditch, by assigning to each his proportion thereof, to maintain as a division fence. Neither party can complain of the other for neglect. The law, therefore, concludes, that "both parties must be presumed *to elect to occupy* and improve their lands under the rules of the common law, and subject to the common law responsibilities." (4 *Met.* 591.)

If it be contended, that this ditch was impliedly agreed upon as a division fence, we answer that does not change the common law rule. There was no *division*. Parties can thus agree. (6 *Mass.* 96.) But they must take care of their beasts, or be liable in an action for damages at common law.

By the Court, WING, J.

It is insisted by the plaintiff's counsel, that as neither of the parties to this suit have built a lawful fence on any portion of the line dividing their lands, nor taken any measures to have the line divided or apportioned between them, they are alike in fault. That the act of 1847 abolishes the distinction heretofore existing in the laws between division and outside fences, and puts both upon precisely the same footing; and as defendant did not enclose his field, he could have no remedy for any injury done to it by the sheep of the plaintiff.

We can see nothing in the statement of facts indicating an agreement or understanding between the parties that the ditch was to be deemed by them respectively a sufficient fence.   A ditch was dug by one of them, and the other paid one-half of its cost.   It happened to be on the line, and whether ditch or fence, it was never divided as a line fence by the proper officers, or by agreement between the parties.

By the common law the defendant would not be bound to fence against the adjoining close of the plaintiff, unless by force of prescription or (perhaps) agreement; without either of these obligations resting upon him, the plaintiff would be bound to keep his sheep on his own close, and prevent their escape; and if they escaped, they might be taken on whatever land they were found *damage feasant*, or the owner would be liable to an action of trespass. (4 *Kent Com.* 438; 1 *Cow.* 79; 19 *J. R.* 385; 3 *Blk. Com.* 209; 5 *Greenl.* 357; 6 *Mass.* 94; 4 *Met.* 589.)  If, then, the statutes of our State do not change the common law, the plaintiff must fail in this action.   We will proceed to an examination of our statutes:

By the Revised Statutes of 1846, page 97, sec. 2, it is provided that "the respective occupants of land enclosed with fences, shall keep up and maintain partition fences between their own and the next adjoining enclosure in equal shares, as long as both parties continue to improve the same." This section imposes obligations upon the respective occupants of adjoining lands, and in subsequent sections provision is made for enforcing these obligations; but until their respective shares or portion of the fence are ascertained, either by assignment or according to these provisions of the statute, this statute would remain inoperative.

We have seen that it is claimed by the plaintiff that the act of 1847, abrogates the provisions of the Revised Statutes, to which we have referred, and makes it obligatory on all persons to fence their fields against beasts, on the adjoining close, or running at large; but before considering the

provisions of that statute, we will notice some other provisions of the Revised Statutes. By sec. four of chap. sixteen, title four, it is provided that "the inhabitants of each township may, at any legal meeting, by vote of the qualified electors thereof, make all such orders and by-laws for determining the time and manner in which cattle, horses, swine and sheep, and any other animals, shall be restrained from going at large in the highways," &c.

For many years after the lands of this State were settled, emigrants were unable to provide pasturage for their domestic animals, on their own lands; they were therefore compelled to permit them to go at large upon the neighboring unenclosed lands; but this habit did not occasion any change in the legal obligations of the people; the common law was enforced when *these* animals trespassed upon any man's enclosures. In process of time it was found necessary to provide by law, some mode of enforcing the maintenance of division fences, and accordingly statutes were enacted for this purpose, which have continued in force to this day; but they did not change the common law in respect to exterior fences, or compel occupants of lands to fence against animals going at large. The town law last cited, seems to have been made in reference to this custom, if it does not (impliedly) sanction it in respect to unenclosed lands. The Legislature of our State appear to have desired to favor the poor emigrant by permitting his cattle to run at large; but they do not appear to have thought it competent to provide by express enactment that animals might go at large and trespass upon the lands of any citizen. With a view, therefore, to accomplish their object in another form, the law of 1847 was passed, by which it was enacted that "no person shall be entitled to recover any sum of money in any action at law, for damages done upon lands by any beast or beasts, unless in cases where by the by-laws of the proper township, such beasts are prohibited from running at large,

except in cases where such lands are enclosed by a fence of the same height and description as is required by the pro- visions of sec. one, chap. eighteen, of the Revised Statutes of 1846."

The broad phraseology of this statute would seem at first view sufficient to cover both division and exterior fences; but a more careful examination of the laws existing at the time this statute was passed, in connection with it, has convinced us that it was enacted only in reference to exterior fences or enclosures. The exception in this act relates to beasts run- ning at large, and to lands *enclosed*, as distinguished from unenclosed or wild land, and not to adjoining enclosures. The by-laws of the township could not affect division fences—the laws already in force sufficiently provided for those, but did not provide for exterior fences, or enclosures. Unless the general words of this act are so restricted as to make them applicable only to exterior fences, they will stand in conflict with the provisions of the Revised Statutes which we have cited, or will have the effect to repeal them. There is no repealing clause in this act, and to hold that it implied- ly repeals chap. eighteen, would violate a sound rule of con- struction, which forbids the repeal of an old statute by a new one by mere implication. The effect of a repeal of chap. eighteen, would be to compel each adjoining owner of lands to fence entirely around his farm, or lose all his crops, and have no redress. We think it cannot be inferred that this was intended by the Legislature. On the contrary, we think the intention of the Legislature was, as we have stated, to provide a law regulating external fences. This construction will harmonize all the statutes, and it is our duty to accom- plish this result if possible.

Then, assuming that the act of 1847 does not relate to divi- sion fences, and that chap. 18 of the R. S. is in force, what is its effect upon the rights of the parties to this case? Nei- ther party was bound to maintain the division fence. Each

22

adjoining occupant of land is bound to build half of it, but unless the fence on the line had been divided by agreement, or pursuant to the statute, neither party is bound to maintain any part of it.  Either the one or the other party might move in the matter, and he must do so before he can make the provisions of the statute a protection for himself.  And if either party puts cattle on his own land, and they enter upon the land of the other, (there being no partition fence,) he will be liable to an action therefor.  (6 *Mass.* 96; 4 *Met.* 501; 4 *Halst.* 384; 3 *Harr.* 368.)  These decisions were made upon statutes essentially like ours, and we find no exception to the doctrine contained in them, except in the cases in 14 Conn. 292, 1 Verm. 470; but those decisions were made upon statutes which required the owners of lands to fence their fields; they do not bear on this case.

Another defence made to this action, is that it was commenced under the provisions of chap. 124, called the general replevin law, instead of chap. 125, relating to beasts distrained or impounded.

An action of replevin under chap. 124, is restricted to cases in which the plaintiff shall make and annex to the writ an affidavit, stating that the plaintiff is then entitled to the possession of the property, &c.; that the same has not been taken for any tax, assessment, or fine, nor seized under any execution or attachment against the chattels of plaintiff, and that the chattels are unlawfully detained.

Chapter 125 also gives a writ of replevin to persons whose beasts are distrained or impounded, to obtain satisfaction for any damage alleged to have been done by them, and section 18 declares that the same proceedings shall be had thereon as in other cases of replevin, except as thereinafter provided. Section 19 provides *that such writs shall not be executed in any case* unless the plaintiff in the action, &c., shall make and annex to the writ an affidavit, stating therein that the beasts, describing them, *have been distrained or impounded,*

and are detained by the defendant, and that the plaintiff is the owner of such beasts, or that he has a lawful right to the possession thereof. The form of the writ under either chapter is the same, but the affidavit, without which the writ is not allowed, is required to be different under the last named chapter, and the execution of a writ issued to recover property distrained is prohibited, unless the affidavit therein prescribed is made and attached to the writ. The general words of the first section of chapter 124, would seem to authorize a writ of replevin in all cases not prohibited in subsequent sections. Those sections seem to have been designed to exclude all cases in which the property is in the custody of the law, by virtue of proceedings against the owner of it. The case of distress is not strictly within the exempted cases stated, yet its object is, by taking the property, to enforce payment of an amount of damages claimed. It operates upon the property occasioning the damage, and not directly upon the owner of it. So does an attachment; the object of both is to enforce payment of a debt or damages, and if the law makers had not considered a distress as fairly embraced within the class of cases prohibited in chap. 124, it would seem to have been quite useless to provide all the details of a special proceeding in cases of property taken by distress, as in chap. 125. The rights of the parties are different under the different actions, and the judgment may be different in certain cases. In cases of distress, the pound master has control of the property only by virtue of the proceedings by which his possession was acquired, the same as a sheriff or other officer. He has no personal lien. Under chap. 124, this right or possession of the pound master would not be protected; for that chapter does not deal with cases where the property is in the custody of the law, it only enables the defendant to protect his possession against the general owner, when he has a special property, by means other than legal proceedings. It protects his possessions when accompanied by a lien, and enables the Court to

render judgment in such manner as will protect his lien; but chap. 125 especially protects the pound master or distrainor, provides for the judgment to be rendered in the case in every contingency, but it does not authorize a judgment of a return of the property in case of nonsuit or discontinuance, as is authorized and required by chap. 124, unless waived by the defendant. There are other differences, but we do not deem it necessary to notice more of them. We think the remedy given by chap. 125, is a special proceeding adapted to this case of distress of property, and that it expressly negatives a remedy by replevin in any other manner than is therein provided. We are, therefore, of the opinion, that the plaintiff has not pursued the remedy prescribed by the law which governs in such cases, and that he cannot recover in this action. Let it be so certified to the Circuit Court for the County of Washtenaw.