PERRY vs COBB.

Opinion delivered September 23, 1903.

1. *Animals—Damages by—Evidence.*

In an action to recover damages resulting from cattle breaking through fences and destroying crops, where the question is as to whether the cattle were breachy, it was not error to refuse to allow defendant to prove that the same cattle, in the same pasture, did not, in the year following that in which the damage was done, break through the fence; there being some evidence that the fence had been repaired in the spring of the latter year.

2. *Animals—Damages by—Evidence.*

An assignment of error based on the refusal of the court to permit a witness to answer a question whether, from his experience as a cattleman, and with the cattle in question, they were more than ordinarily breachy or more apt than the general run of cattle to break through fences and destroy fences, is not well taken, for the question was open to the objection that it was leading.

3. *Damages—Action for—Complaint—Variation Between Pleading and Proof.*

In an action for damages for destruction of crops by cattle, the complaint charged that the defendant unlawfully and with force broke down the fence and then and there entered upon the crops with his cattle and trod down, ate up and destroyed the same. *Held*, the allegations were properly made, and though the proof failed to show that the defendant himself broke the fence, but that it was done by the cattle, there was no material variance.

4. *Animals—Damage by—Duty to Fence—Liability of Owner.*

In the Indian Territory, which is a grazing country, the owner of animals is not liable for injuries committed by them unless they have broken through a sufficient fence; and it is only necessary to show knowledge on the part of the owner of the vicious character of his animals, if they are such, when the injury is committed, while the animal is not a trespasser.

5. *Animals—Damage by—In Enclosure of Another—Instructions.*

In an action for damages to the crops of one by the cattle of another,.

breaking through the enclosure of the plaintiff, the question for the. jury to determine is, after finding the injury by the cattle as claimed, whether the owner of the crop had same enclosed in a fence sufficient to turn cattle of ordinary disposition; and instructions charging this fact and that this is a grazing country, where cattle have the right to run at large, and people who have enclosures must have a good and sufficient fence to turn cattle of ordinary disposition, and the owners of cattle are not liable to the owners of inclosures for damages unless the cattle running at large are breachy and of a vicious disposition, fully cover the law of the case.

6.   *Instructions—Specific Charges not Required when Covered by General Charge.*
      It is not error for the court to refuse to give specific instructions, requested, on matters already fully covered by the general charge.

7.   *Animals—Damages—Action for—Instructions.*
      In an action for damages by animals of an adjoining land-owner, it was not error for the court to refuse to instruct the jury that the duty of maintaining division fences between them might be the subject of agreement, and that if you find there was an agreement that plaintiff's landlord was to keep the fence in repair, and that he failed to keep the fence in such repair as would turn cattle of ordinary disposition and that by reason of defects in the fence the cattle strayed through, the plaintiff cannot recover, when the court gave other instructions covering these and even more favorable to defendant.

8.   *Instructions—Correct Statements of Law but not Applicable Under Evidence, Properly Refused.*
      When the evidence showed that plaintiff kept two men employed for 33 days riding the fence, which was about three miles long, and that it was impossible to keep breachy cattle out of the field without employing an army of men day and night, it was not error for the court to refuse to give an otherwise proper instruction that if the damages complained of could have been prevented by timely labor on plaintiff's part after notice of the insufficiency of the fence, then plaintiff could not recover; for the instruction, while correct was inapplicable under the evidence.

9.   *Pleading—Amendment—When Properly Made.*
      An assignment of error based upon an amendment of the plaintiff's petition, is without merit when the record fails to show any objection

taken to the amendment when made, and when the same. was made before the jury were impanelled, the court having power to permit it at any time before verdict.

10. *Damages—Action for—Evidence.*

Testimony of a witness, in an action for damages for destruction of crops by cattle, that there were portions of the corn that would have made twenty to twenty-five bushels to the acre, and remarks of the court that according to his recollection it was worth fifty cents per bushel at the time, do not constitute reversible error, because the error, if any, was corrected by a charge of the court that the jury should not consider any evidence in relation to the condition of the crop unless it threw light upon the value; and that the only damage the plaintiff could recover was the value of the crop at the time of its destruction.

11· *Damages—Action for—Evidence—Character of Cattle.*

The court committed no error, in an action for damages to crops caused by cattle breaking through an enclosure, in asking a witness what was the character of the cattle, breachy or not, whether they would break down fences, and the witness answered that they were the worst he ever saw, in view of the fact that one of the  main  issues in  the case was whether these identical cattle were breachy.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by D. A. Cobb against Joe Perry.   Judgment for plaintiff.   Defendant appeals.   Affirmed.

The appellant, Perry, defendant below, was the owner of a herd of cattle, and kept them in his pasture, which adjoined a farm  of one Williams, both Perry and Williams being citizens of the Chickasaw Nation.   The places of Perry and Williams were separated by a division fence, which, by agreement between them, Williams undertook to keep in repair.   Williams had

formerly been the owner of the pasture, and sold it to Perry, making the agreement with reference to the fence at the time of this sale. Williams afterwards rented the farm to appellee, Cobb (plaintiff below), and Williams agreed with Cobb to keep the fence in repair between the farm and the pasture of Perry. During the season of 1901 the cattle of appellant broke through this fence, and destroyed appellee's corn crop, for which damages this suit is brought. Appellee recovered judgment against appellant for $722.50 and interest, from which this appeal is taken. Appellant assigns 20 reasons why the judgment of the court below should be reversed, and, as 14 of them go to requested instructions refused, it will be necessary to insert the charge of the court as given. The court charged the jury as follows: "Gentlemen of the jury, the plaintiff in this case brings his action for damages against the defendant for alleged destruction of a portion of his corn crop raised in the year 1901. The burden is upon the plaintiff to establish by a fair preponderance of the evidence all the material allegations of his complaint. You are the sole judges of the weight of the testimony and the credibility of the witnesses. The question of fact is one exclusively for your consideration. It is claimed by the plaintiff that he was the tenant of a man by the name of Williams, and that the land upon which he was farming was adjoining a pasture owned by the defendant. The plaintiff insists that the division fence between the land which he was working was a good and sufficient fence to turn cattle of ordinary disposition; but that the cattle of defendant were not cattle of ordinary disposition, but were breachy cattle, and destructive in their disposition, and that they broke through the fence, and destroyed a large part of his crop of corn, to his damage, and that plaintiff gave notice to the defendant of the destruction that was being done by his cattle. The defendant insists that division fence between the plaintiff's land and defendant's pasture was owned by the landlord of the plaintiff, and that

the plaintiff's landlord, Williams, and the defendant had an agreement by virtue of which the landlord of the plaintiff was to keep the fence in repair and that defendant sent notice to the plaintiff or to his landlord that the fence was not in repair. The court instructs you that this is a !grazing country, and the rule is that cattle have a right to run at large, and that people who have inclosures must have a good and sufficient fence— sufficient to turn cattle of ordinary disposition; and the owners of cattle are not liable to the owners of inclosures for damages unless the said cattle so running at large are breachy and vicious cattle, and not cattle of ordinary disposition. In this case, if you are satisfied that there was an agreement between the landlord of the plaintiff and the defendant that the landlord of the plaintiff should keep the fence in a good state of repair then the court would instruct you that the same rule would apply as to the character of the fence to be maintained between these two adjoining owners as applies when the cattle are running at large on the range. Hence the question for you to determine from the evidence is whether the plaintiff or his landlord kept the division fence in a good condition. sufficient to turn cattle of ordinary disposition; and if you find that they did not keep such a fence, then your verdict should be for the defendant. But if you are satisfied by a fair preponderance of the evidence that the fence was a good and sufficient fence to turn cattle of ordinary disposition. that the damages were done by the cattle of the defendant by reason of their vicious and breachy character, then your verdict should be for the plaintiff. If you find for the plaintiff, the court would instruct you that the measure of damages which the plaintiff could recover in this action would be the value of the corn crop at the time of its destruction, and all evidence that has been admitted in relation to the condition of the corn crop that does not throw light upon the question of the value of the corn crop at the time of its destruction should not be considered by you. If you find for the plaintiff, and allow

(47)

him damages, the court would instruct you that the amount so allowed should draw interest, at the rate of six per cent per annum from the date the last damage that was done to the plaintiff's corn crop, as may be shown by the evidence. Should you be satisfied from the evidence that the division fence was not of sufficient character to turn cattle of ordinary disposition or that defendant's cattle did not damage the plaintiff's corn, or that defendant's cattle were not breachy or vicious, more than cattle of ordinary disposition, then your verdict should be for the defendant. You are further instructed that any damage that may be shown to have been committed by cattle belonging to other people than the defendant cannot be recovered for in this action, no matter through what fence such cattle entered; and such damage, if any, committed by other cattle, must not be included in your verdict in estimating the damages."

*J. W. Hocker*, for appellant.  *G. M. Miller* and *J. F. Sharp*, for appellee.

CLAYTON, J. The first and second assignments are that the court erred in refusing to allow defendant to prove that the cattle which were alleged to be breachy in 1901 were not breachy in 1902, and that the same cattle were in the same pasture in 1902, and did not break through the fence in 1902. Both these claims were predicated on the theory, and perhaps the fact, that the cattle did not break into the corn in 1902. But there is nothing to show that the cattle might not have reformed; or, perhaps, a better, and possibly the very, reason they did not break through, if they did not, was because the plaintiff learned their disposition, and built his fence in accordance with his knowledge of their vicious disposition. There was evidence to show that the fence had been repaired in the spring of 1902. The issue being tried was, was the fence in 1901 sufficient to turn cattle of ordinary disposition?

Third. This assignment seems to have been carelessly inserted. It is based on the fact, as alleged, that the court refused to permit one of defendant's witnesses to answer the following question, propounded by defendant's counsel: "Q. From your acquaintance with the cattle that Mr. Perry kept in that pasture, and your experience as a cowman and a farmer, I will ask you if the cattle that Mr. Perry kept in that pasture were more than ordinarily breachy, or more apt than the general run of cattle to break through fences and destroy fences?" The court sustained an objection to this question on the ground that it was leading. It did not refuse to permit the defendant to make the proof, if done in a proper way. The question was open to the objection made to it. Besides, the record shows that the witness immediately answered the question by saying, "I could not say that they were, no more than ordinary cattle." Thus the defendant got the full benefit of the testimony of the witness, without even complying with the rule of the court to ask the question in a proper manner.

Fourth. The fourth assignment of error is based on the refusal of the court to instruct a verdict for the defendant. Counsel for appellant in his brief insists that the proof did not conform to the allegation of the complaint. The paragraph of the complaint alleging negligence is as follows: "That * * * the said defendant unlawfully and with force broke down the said fence and entered upon the said 418 acres of corn, and then and there, with his cattle, trod down, ate up, and destroyed the said corn and stalks, to plaintiffs great damage," etc. It is contended that, as the proof failed to show that the defendant himself broke the fence, the court should have instructed a verdict in his favor. But there is no merit in this contention. The complaint does not allege a willful and intentional breaking of the fence, and is, therefore, an action for a trespass committed by his cattle, which he negligently permitted. The complaint

is in almost the exact language of the form given for such action in Maxwell on Code Pleading.

Fifth. This specification assigns error because the court refused to instruct the jury as follows: "The jury are instructed that in the Indian Territory the owners of cattle are not bound to fence them up, and, to entitle a plaintiff to recover for damages done by defendant's cattle while running at large by breaking into the field of plaintiff and destroying his crops, the plaintiff must prove by a fair preponderance of the evidence that this field was protected by fence sufficient to turn cattle of not more than ordinary disposition, and must further prove that the cattle alleged to have destroyed the crops were more than ordinarily liable to break through fences and destroy crops, and that such vicious disposition was known to the defendant." And the sixth assignment, which is as follows: "The court erred in refusing to instruct the jury, as requested by appellant: 'One who sues for a trespass by cattle upon his land must show that he maintained a sufficient fence to turn cattle of ordinary disposition, and the rule is that the owner of cattle is not liable to an action for damages done thereby unless the animal is more than ordinarily liable to break into an inclosure, and that the owner knew of this vicious propensity of the animals trespassing.'" The instructions requested by the fifth and sixth assignments were fully covered by the charge of the court as given, with the exception of the qualification that the vicious disposition of the cattle must have been known by the defendant. By the common law of England, owners of animals were bound to keep them under fence, or at least the owners of land were not obliged to keep it fenced, and the owners of cattle running at large were liable for damages committed by their trespass. But in the Southern and Western States, where it is largely a grazing country, this rule has never been in force, and no liability arises unless the animals break through a sufficient fence.

Where an injury is committed by reason of the viciousness of an animal, when that animal is not a trespasser, it is necessary to show knowledge of such viciousness on the part of the owner But in this case the question for the jury to determine was, did the plaintiff maintain a fence sufficient to turn cattle of an ordinary disposition? Knowledge on the part of the owner of their breachy nature, if they were in fact such, was not an essential element in the case. Shear. & Red. on Neg. (4th Ed.) 656.

The seventh, eighth and twelfth assignments of error are as follows; "(7) The court erred in refusing to instruct the jury, as requested by appellant: 'It is a matter of common knowledge that the Indian Territory is a grazing country, where cattle in great numbers run at large; and the rule is that cattle are to be fenced out, rather than fenced in.' (8) The court erred in refusing to instruct the jury, as requested by appellant: 'In the Indian Territory, where uninclosed land of adjoining owners is inclosed by a general inclosure of surrounding owners, one of such adjoining owners is not liable to the other for a trespass of his cattle on account of not having a division fence. The rule of the common law requiring the owner of cattle to confine them on his own land does not prevail in the Indian Territory.'" "(12) The court erred in refusing to instruct the jury as requested by appellant: 'If you should find for the plaintiff, the measure of damages is the value of the crops in the condition in which the same are at the time of the trespass.'" These requested instructions were fully covered by the charge of the court as given. The court in fact gave a more favorable instruction for the defendant than was asked as shown by the eighth assignment, for the court not only told the jury that the defendant was under no obligation to maintain the fence, but that it was the plaintiff's duty to maintain a sufficient fence himself. There was no error in refusing to give instruc-

tions on matters which had been fully covered by the charge already given. Rio Grande Western R. Co. vs Leak, 163 U. S. 280, 16 Sup. Ct. 1020, 41 L. Ed. 160; Agnew vs U. S. 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624; Coffin vs United States, 162 U. S. 664, 16 Sup. Ct. 943, 40 L. Ed. 1109; Humes vs United States, 170 U. S. 210, 18 Sup. Ct. 602, 42 L. Ed. 1011; Crisman vs McDonald, 28 Ark. 8; Casey vs State, 37 Ark. 67.

The ninth, tenth, and eleventh assignments are as follows: "(9) The court erred in refusing to instruct the jury, as requested by appellant: 'The plaintiff claims that the lands of his landlord and that of the defendant are adjoining inclosures, and the jury are instructed that, if they find such to be the case, the duty of maintaining any division fences between such lands may be the subject of agreement." (10) The court erred in refusing to instruct the jury, as requested by appellant: 'The defendant claims that there was an agreement that the landlord of plaintiff was the owner of the fence, and that he would keep the same in repair; so, if you should find that there was such an agreement, then the court instructs you that, if the landlord of plaintiff failed to keep the division fence in such condition as would turn cattle of ordinary disposition, and by reason of the defects in the fence the cattle of defendant strayed upon the lands of plaintiff, you will find for the defendant.' (11) The court erred in refusing to instruct the jury, as requested by appellant: 'The jury are instructed that if it was the duty of Mr. Williams, the landlord of the plaintiff, to keep up the fences, and he failed to do so, the plaintiff cannot recover.'" These instructions were also fully covered by the charge of the court. The court told the jury that, if there were an agreement between plaintiff and his landlord that the landlord should maintain the fence, and that if the landlord, or the plaintiff himself, failed to do so, plaintiff could not recover. This was even more than the defendant requested.

The thirteenth specification of error is as follows: "(13) The court erred in refusing to instruct the jury, as requested by appellant: 'The proof tends to show that the fences were repaired some time in July, or possibly the first of August, 1901—which date the jury are to fix for themselves—and the jury are instructed that if the damage was done prior to this date, and the fence was in a defective condition prior to this time and at the time the damage was done, that the plaintiff cannot recover for any damage done by the defendant's cattle prior to the repairing of the fence in July or August.'" And the fourteenth is as follows: "(14) The court erred in refusing to instruct the jury as requested by appellant: 'The jury are instructed that if the damages complained of could have been prevented by timely labor on the part of the plaintiff, or his landlord, after notice of the insufficient fence to turn defendant's cattle, and protect his crops, that it was the duty of the plaintiff and his landlord to repair, or to act and prevent the damage if it could be done, for he cannot sit idly by and allow damage which he might avert by a small outlay, and then compel defendant to pay damage which he has allowed to be done.'" As abstract propositions of law, these instructions state the law correctly. But in this case we think they are inapplicable. The proof did not tend to show that the fence was repaired in July or August, except where it would become necessary to do so after the cattle had broken it down. The issue was squarely submitted to the jury as to whether or not the fence, during the year 1901, was sufficient to turn ordinary stock; and this was the issue in the case. There was no testimony to show that any damage had been committed prior to July; hence an instruction that they could find no damages for injury done prior to that time was inapplicable. A verdict based upon the instruction requested as shown by the fourteenth assignment could not have been sustained. The proof showed that the plaintiff kept two men employed for 33 days, riding the fence. The fence was

about three miles long, and it would be almost impossible to keep breachy cattle out of the field, without employing an army of men, day and night, to guard the fence. We think the proof shows that the plaintiff exercised his full duty in this respect, which left the only issues proper to be submitted to the jury, to wit, the sufficiency of the fence and the breachy nature of the cattle, both of which were fully covered by the charge as given. Besides this, no such issue was presented by the answer.

The fifteenth and sixteenth assignments are as follows: "(15) The court erred in refusing to instruct the jury, as requested by appellant: 'If the jury find for the plaintiff, they are instructed that the plaintiff cannot recover damage done by other cattle other than the cattle of the defendant, and even then only that done by those entering through the partition fence described in plaintiff's complaint; and if any of the injury was done by other cattle, or by cattle of the defendant entering the field through the outside fences, such damages must not be included in estimating the damage done by the cattle of the defendant entering through the partition fence.' (16) The court erred in refusing to instruct the jury, as requested by appellant: 'If the jury find for the plaintiff, the jury are instructed that the only damage to be considered is that which has been shown by the testimony to have been done by cattle of the defendant entering through the partition fence; and if, from the testimony produced, the jury are unable to determine what proportion was done by such cattle, then they can only return a verdict for nominal damages, and they are so instructed.' These matters were fully covered by the instructions given, and for the reasons stated above there was no error in a refusal to restate the same propositions.

The seventeenth assignment is: "(17) The court erred in refusing to instruct the jury, as requested by appellant 'If you find for the plaintiff, you are instructed that any damage

done prior to July, 1901, by defendant's cattle, cannot be included in estimating the amount of the damage.'" As above stated, there was no evidence that any damage had been done, and none was claimed by plaintiff, prior to July, 1901, and therefore the instruction was properly refused as not applicable.

The eighteenth assignment is: "(18) The court erred in allowing plaintiff to amend his petition by interlining the word 'July' over objection of defendant." There are two reasons why this assignment is without merit. In the first place, the record fails to show that objection was taken to the amendment, and the only information of the fact that the amendment was made comes from the assignment itself. In the second place, the amendment, if made at all, was made before the jury was impaneled, and the court certainly had the power to permit it to be made at that time, or at any time before verdict.

The nineteenth assignment is: "The court erred in allowing in evidence the testimony of the witness Cobb, and in refusing to strike out and exclude from the jury the testimony, 'There is portions of the corn that would have made twenty to twenty-five bushels per acre,' and the remarks of the court at the time, 'My recollection is that it was worth fifty cents per bushel at the time.' He says, 'I was offered for my corn fifty cents per bushel.'" If there were error in this, it was fully corrected by the charge of the court, in which it told the jury that "the measure of damages which the plaintiff could recover in this action would be the value of the corn crop at the time of its destruction, and all the evidence that has been admitted in relation to the condition of the corn crop that does not throw light upon the question of the value of the corn crop at the time of its destruction should not be considered by you." The witness was required to state the value of the corn crop at the time of its destruction, and this had to be arrived at in various ways, one of which was how much the corn would make to the

acre, considering, of course, the fact that it had to be tended until maturity and gathered; and the value of the corn was another method of arriving at its value at the time of its destruction. As the jury were properly told that they must not consider any testimony which did not throw light on the value of the crop at the time of its destruction, if it did not throw such light, they discarded it; if it did, it was competent testimony.

The twentieth and last assignment is: "The court erred when he interrogated witness Williams at the close of the redirect testimony, and in refusing to exclude the question and answer from the jury: 'What was the character of those cattle —breachy or vicious cattle; cattle that would break down fences? Answer. They would break right through fences. I saw them break through the lane fence. They could not keep them out. The worst I ever saw.'" This is answered by the following from appellant's brief: "In such a case as was tried we submit that one of the issues is as to whether or not the identical cattle complained of were breachy. The very essence of the wrong done is in keeping of such animals with the knowledge of their vicious propensity." We have already stated that we agree with this statement of the law, except as to the knowledge of their viciousness, and the question asked did not raise that issue.

Finding no error in the proceedings of the court below, the judgment is affirmed.

GILL, C. J., and RAYMOND, J., concur.