## BLASDEL v. FINKS.

No. 3171.   Opinion Filed May 12, 1914.

(140 Pac. 1178.)

1.   INDIANS—Allotted Land—Trespass—Animals.   Under section 18 of the Creek Supplemental Agreement (Act June 30, 1902, c. 1323, 32 St. at L. 500) the inhibition against the trespass of live stock owned by a noncitizen upon the allotted lands of a citizen and the remedy therefor runs with the land to an occupying noncitizen's tenant of such allottee.

2.   ANIMALS—Trespass—Cultivated Lands Held in Severalty.   Where lands held in severalty are within a common fenced inclosure devoted to the cultivation of agricultural crops, even in a "free range" country, an occupant of any portion of such lands must prevent his live stock from trespassing upon the lands of other occupants.

(Syllabus by Thacker, C.)

*Error from District Court, Okfuskee County;*
*W. A. Huser, Special Judge.*

Action by J. S. Blasdel against P. M. Finks for damages for trespass of defendant's cattle on plaintiff's crop. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*C. W. Brewer,* for plaintiff in error.

*John L. Norman,* for defendant in error.

Opinion by THACKER, C. Plaintiff in error was plaintiff and defendant in error was defendant in the trial court.

Plaintiff, a noncitizen and a tenant, had corn and cotton standing upon the lands of a citizen allottee of lands in the Creek Nation from whom he had rented; and these crops were within a common inclosure of lands upon which were grown in 1905 the crops of several other tenants, including one A. L. Black, who cultivated the lands of another allottee. Plaintiff's crops were damaged by cattle going upon the lands upon which the same stood in 1905 and during the first part of 1906; and he sues defendant, a noncitizen of said nation, for $100 as such damages.

Defendant purchased Black's interest as tenant in the land occupied by him some time during the year 1905; and it was a controverted question as to whether defendant kept his cattle thereon in both 1905 and 1906, and as to whether his cattle, either from these lands or from elsewhere, went upon the lands occupied by plaintiff and damaged the latter's crops, also as to whether defendant, as succeeding tenant, was entitled to the use and possession of the lands occupied by plaintiff on and after January 1, 1906, which involved a controverted claim of agreement between these parties in this regard. In the evidence for plaintiff, it appeared that with defendant's trespassing cattle were generally cattle owned by one or two other persons; and there was little, if any, evidence from which the *pro rata* amount of damages by defendant's cattle might be determined.

The only question necessary to a decision in this case arises upon the following paragraph of the court's instructions to the jury:

"The jury is instructed that, if they believe from a preponderance of the evidence that there was included in one common fenced enclosure the land upon which plaintiff's crops claimed to have been damaged were situate and other lands upon which defendant, Finks, owned a crop and was entitled to possession of, the defendant, Finks, was under no obligation to maintain any fence between himself and plaintiff, but, on the contrary, it was the duty of plaintiff, Blasdel, to maintain a sufficient fence himself against defendant's cattle, and, if such fence was not so maintained by plaintiff, Blasdel, he should not recover any damage which you may find from a preponderance of the evidence was committed upon his said crops by the cattle of defendant, Finks."

In our opinion, this instruction was error, notwithstanding the fact that on September 23, 1903, in a case which arose in 1901 (*Perry v. Cobb,* 4 Ind. T. 717, 76 S. W. 289), the Court of Appeals of the Indian Territory held as follows:

"In the southern and western states, where it is largely a grazing country, the owner of cattle is not liable for trespass committed by them, unless they have broken through a sufficient fence."

In the case of *Perry v. Cobb, supra,* there was, of course, no question as to the effect of the Creek Supplemental Agreement of June 30, 1902; nor was there any reference to that agreement. Section 18 of said agreement, which is pertinent here, reads as follows:

"Cattle so introduced and all other live stock owned or controlled by noncitizens of the nation shall be kept upon inclosed lands, and if any such cattle or other live stock trespass upon lands allotted to or selected for allotment by any citizen of such nation, the owner thereof shall, for the first trespass, make reparation to the party injured for the true value of the damages he may have sustained, and for every trespass thereafter double damages to be recovered with cost, whether the land upon which trespass is made is inclosed or not." (Bledsoe's Indian Laws, 442.)

In our opinion, this section of this agreement is not sus ceptible of such interpretation or construction that no benefi

may be demanded or action be maintained by any person other than the allottee, and such interpretation or construction would deprive the allottee of an element of value in his allotment— the value arising from the ability to transfer his rights to his tenant; and we must hold that the benefits of this section run with the land to tenants of the allottees.

It seems equally clear that lands within a common fenced inclosure devoted to the cultivation of such agricultural crops as these; even in a free range country, would, upon the ground of an implied agreement, be subject to the rule that each occupant of the inclosure must keep his live stock from trespassing upon the crops of other occupants. 2 Cyc. 392 and 397, 398; *Kobayashi v. Strangeway*, 64 Wash. 36, 116 Pac. 461; *Johnson v. Wing*, 3 Mich. 163; *Coxe v. Robbins*, 9 N. J. Law, 384; *Winters v. Jacobs*, 29 Iowa, 115; *Montgomery v. Handy*, 63 Miss. 43; *Milligan v. Wehinger*, 68 Pa. 235; *Baker v. Robbins*, 9 Kan. 303; *Markin v. Priddy*, 40 Kan. 684, 20 Pac. 474; *O'Riley v. Diss*, 41 Mo. App. 184; *Broadwell v. Wilcox*, 22 Iowa, 568, 92 Am. Dec. 404; *Sturtevant v. Merrill*, 33 Me. 62; *McBride v. Lynd*, 55 Ill. 411; *Thayer v. Arnold*, 4 Metc. (Mass.) 589; *Gooch v. Stephenson*, 13 Me. 371; *Eastman v. Rice*, 14 Me. 419; *Little v. Lathrop*, 5 Me. (5 Greenl.) 356; *Knox v. Tucker*, 48 Me. 373, 77 Am. Dec. 233; *Myers v. Dodd*, 9 Ind. 290, 68 Am. Dec. 624; *Angell v. Hill*, 18 N. Y. Supp. 824, Memo. Dec. 64 Hun, 633.

If the inclosure had been devoted to and maintained for grazing, it would seem evident that such use and purpose would forbid the view that any occupant was bound to keep his live stock upon his own lands; and, upon the same reasoning, it would seem inconsistent with the use and purpose of growing such agricultural crops as corn and cotton, to which it was devoted, to say that any occupant could rightfully violate such use and purpose by giving his live stock "free range" therein.

Defendant contends that, if the giving of the foregoing instruction to the jury was error, the same was harmless, for the reason that there is no sufficient evidence of damage chargeable to him; but with this proposition we are unable to agree.

There was at least evidence tending to prove that defendant's cattle, with others, trespassed upon and damaged plaintiff's crops; and, if the evidence does not show what portion of the whole amount is properly apportionable as a charge against defendant, or what per cent. of the damage was done by his cattle, which we deem it unnecessary to determine, the plaintiff would at least be entitled to nominal damages, if such evidence is found to be true.

Upon another trial the following cases may be found helpful in respect to the question as to how damages may be proven where crops have been injured or destroyed: *Chicago, R. I. & P. Ry. Co. v. Johnson,* 25 Okla. 760, 107 Pac. 662, 27 L. R. A. (N. S.) 879; *St. Louis & S. F. R. Co. v. Ramsey,* 37 Okla. 448, 132 Pac. 478.

In our opinion, this case should be reversed and remanded for a new trial.

By the Court: It is so ordered.