## DANIEL MARKIN v. ROBERT PRIDDY.

1. DEFECTIVE FENCE — *Trespass by Cattle* — *No Recovery, When.* Where M. so incloses his land by joining his fence with the fences of other land-owners, by which the fence surrounding the land of P. forms a part of such inclosure, but no contract or agreement is entered into between M. and P. in relation to the fence, and no consent of P. has been obtained to such fencing, and no part of the fence is attached to the fence of P., such an inclosure by M. does not constitute a fencing in common as between M. and P.; and where P., being the owner of cattle, turns them at large upon his own land, and they wander at will through a defective fence of P., which surrounds his land, and enter upon and destroy growing grain and grass of M.: *Held,* That M. cannot recover for such trespass.

2. TRESPASS — *Recovery* — *Evidence Must Show What.* In such a case, before M. can recover for such trespass, he must show — first, either that his land and the land of P. are fenced in common; or second, that such lands are separated by a partition fence, and that the trespassing animals of P. entered upon and committed the injury through or over a portion of such partition fence, and that it was the duty of P. to keep such portion of such partition fence in repair.

### *Error from Shawnee Superior Court.*

ACTION brought by *Markin* against *Priddy*, to recover $200 damages alleged to have been caused by defendant's cattle to plaintiff's growing corn and grass. On January 14, 1886, the court sustained defendant's demurrer to plaintiff's evidence; and on April 27, 1886, overruled plaintiff's motion for a new trial, and rendered judgment against him for costs. *Markin* brings the case here. The facts are stated in the opinion.

*James J. Hitt,* and *Overmyer & Safford,* for plaintiff in error.
*Vance & Campbell,* for defendant in error.

Opinion by CLOGSTON, C.: In 1883 the plaintiff purchased the east half of a section of land. At that time W. C. Mead owned the northwest quarter and the defendant the southwest quarter of the same section, and one Easterday owned the quarter-section immediately south of the plaintiff's and

cornering with the defendant's land. At that time the defendant's land, Mead's land and Easterday's quarter were fenced. There was a division fence between Mead's land and the defendant's. Easterday's land cornered with the plaintiff's, and their fences joined. On the east line of defendant's land was a poor wire fence, which was partly on the plaintiff's land. In the spring of 1884 the plaintiff inclosed his land by building a fence on his east line, connecting the south end with Easterday's fence, and building a fence on the north line, joining fences with Mead. While plaintiff's land was thus inclosed, yet no part of it was fenced in common with the lands either of Mead, Easterday, or the defendant, and no contract or agreement was made between plaintiff and defendant by which they were to occupy their lands in common or fence in common. In the spring of 1885 plaintiff divided his land by running a fence from the southeast corner of Mead's quarter, separating the north quarter from his south quarter. On the 9th day of April, 1884, the defendant purchased the Mead quarter, and continued to own it at the time of the trespass alleged by the plaintiff. In the spring of 1885 plaintiff planted about fourteen acres of corn on his south quarter, the remainder being in grass. The defendant was the owner of a herd of cattle, and permitted them to run at large on his land, and the cattle wandered at will and went upon the premises of the plaintiff, ate up and destroyed his corn, and greatly injured and destroyed his grass. There was also evidence tending to show that before defendant purchased the Mead quarter, Mead had contracted to sell half of his east line of fence to the plaintiff, but at the time of the sale of the land to the defendant, Mead had received nothing for said fence, and defendant had no knowledge of any contract or agreement between Mead and the plaintiff. Afterward plaintiff paid Mead fifteen dollars for one-half of the fence. This fence had never been divided, and there was no agreement as to which part of the fence plaintiff was to have. In the spring of 1885 the plaintiff constructed eighty rods of fence between his land and the defendant's land, and running

south from the southeast corner to the Mead quarter, and re-quested defendant to build a new fence the remainder of the way between their land, which defendant failed to do.

If plaintiff can recover in this action, it must be because their lands were fenced in common, for in that case the de-fendant would have no right to turn his cattle loose in his inclosure and permit them to wander and stray upon the premises of the plaintiff through or over a defective partition fence, or through a fence wholly his. In our judgment, the question as to who owned the east line of the Mead fence is not material; therefore we shall not further consider it. The evidence shows (in fact, the plaintiff makes no claim in his testimony) that he was fenced in common with the defendant; on the contrary, he declares that they were not so fenced in common, and no agreement was made between them by which he gained any such right by reason of having joined fences with Mead and with Easterday, thereby inclosing his land. Before plaintiff can claim any benefits resulting from such an inclosure, he would have to show that he had the consent of the defendant to so fence. Without this consent the defendant would have the right to use his land in severalty, or even to throw it out to the commons. If he could do this, then he could turn his cattle loose upon his own land and let them wander at will. It is true, under the decisions of this court, they would become trespassers by wandering upon the land of another, but the owner of such other lands could not re-cover for the trespass unless his lands were inclosed with a lawful fence. Then the fact that the defendant's fence on the east line was a defective one, with the wires on the ground in places, could make no difference to the plaintiff. The plain-tiff had no right to complain of this fact. The defendant was occupying his land by itself; he was not fenced in com-mon with Mead or with Easterday, and therefore not in com-mon with the plaintiff. He could do with his land as he pleased. He could put up his fence or let it be down; it con-cerned nobody but himself. Before the plaintiff could com-plain he must be in a situation to require the defendant to

mend it or make a partition fence; and then even before he could do this, he must show that he has appealed to the fence-viewers and secured a division of the ground over which a partition fence was to be built.    True, plaintiff claims that he has erected half of that fence between him and the defendant —the north half.   By what right did he so divide the ground and choose or elect to build the north half, and require the defendant to build the south half ?   The fence law requires that where parties are required to erect and maintain partition fences, and there is any dispute between them as to their share of the fence, or the right to build the same, such questions should be decided by the fence-viewers. (Comp. Laws of 1885, ch. 40, §§ 8, 9, 10, 11.) ˙ Nothing of the kind was done in this case.

We are therefore of the opinion that the evidence offered did in no manner support the allegations in plaintiff's petition, and wholly failed to prove a cause of action against the defendant.

It is recommended that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.