DANIEL MARKIN v. ROBERT PRIDDY.

1. ANIMALS—*Trespass*—*Defective Fence.* *Markin v. Priddy,* 39 Kas. 462, referred to, and corrected.

2. FENCES, *in Common.* Where two owners of adjoining farms have the same inclosed by uniting the outside line fences, and there is no partition fence between their farms, and each uses his farm in severalty, their farms, in law, are fenced in common.

3. ———— *Baker v. Robbins,* 9 Kas. 303, followed.

*Motion for Rehearing.*

ACTION by *Markin* against *Priddy,* to recover $200 damages alleged to have been caused by defendant's cattle to plaintiff's growing corn and grass. On January 14, 1886,

the court sustained defendant's demurrer to plaintiff's evidence; and on April 27, 1886, overruled plaintiff's motion for a new trial, and rendered judgment against him for costs. *Markin* brought the case to this court, where the judgment of the court below was affirmed, at the June session, 1888. The plaintiff in error filed a motion for a rehearing, which the court decided at its session in February, 1889, and then filed the opinion, *infra*.    The plaintiff *Markin* owned the east half of section 16, township 10, range 15, in Shawnee county, and the defendant *Priddy* owned the southwest quarter of that section.    The following is a map of the lands aforesaid, including the northwest quarter of said section owned by Mead, and the northeast quarter of section 21, owned by Easterday:

On the trial in the court below the plaintiff testified in sub-

stance that he owned 320 acres of land in Menoken township, in Shawnee county, being the east half of section 16, township 10, range 15, which was all unfenced when he bought it in 1883; that in the spring of 1884 William Mead owned the northwest quarter of said section, and Robert Priddy the southwest quarter thereof; that he agreed with Mead to join fences and pay him therefor; that he built his fence on the north and east sides of his land, and that at the southeast corner of his land he joined his fence with that of Easterday, who owned the quarter just south of him, and that Easterday's fence was on his north line, and joined Priddy's at Priddy's southeast corner; that he never had any agreement with Priddy about a partition fence between them. The plaintiff further testified that when he built his fence there were remnants of an old fence of three or four smooth wires on the ground most of the way, which stood about a rod east of his west line, and that it would not turn cattle; that in the spring of 1885 he put a string of fence from east to west across the middle of his land, so dividing it that the northeast quarter of the section was all fenced off to itself, into which he turned his cattle; that the trespass complained of was committed on the southeast quarter of said section 16, of which there were about 14 acres broken in 1884; that in 1885 he had it rebroken, harrowed, and planted with corn about the 20th of May; that the remainder of the quarter was grass or low land; that the corn came up nicely, was a good stand, and was from two to six inches high when it was destroyed by defendant's cattle; that he saw the cattle in the corn and grass a number of times; that at one time he counted over 90 head of cattle there; that the 14 acres of corn were wholly destroyed by them; that they were running on his lands every day for several months, and that on an average of two or three times a week he drove defendant's cattle off; that he was damaged $200 at least, by defendant's cattle destroying his crop; that about June 18, 1885, he had a conversation with the defendant about his cattle running on his land; then told him that he wanted him to keep them off, and wanted compensation for what damage they

had done; and that he never consented that defendant's cattle might run upon his land. Plaintiff stated that he built eighty rods of fence on the line between his south quarter and defendant's land, and that he told defendant that he wanted him to build his half of the fence and to keep ·his cattle from trespassing upon his land; and that defendant refused to build the remaining portion of the fence, because he had bought the Mead quarter-section, and claimed that he owned all of the division fence that had been built on the east line of ,that quarter, and that it was plaintiff's duty to build all the remainder, that is, the whole 160 rods between the southwest quarter and the southeast quarter of the section. Plaintiff stated that his land is all upland, most of it sloping to the west, and that there was nothing to prevent one standing at Priddy's house-yard or barn from seeing the cattle when they were on his land; that one standing at Priddy's house on the southwest quarter could see more than half of plaintiff's land; that defendant's land slopes from his house to the east; that when plaintiff built the eighty rods of fence between the southeast quarter and the southwest quarter, he got new posts and new wire, and put up a three-strand barbed-wire fence; and that during 1884 defendant purchased the northwest quarter of Mead, and that at the time of this purchase Mead and plaintiff were using and treating the fence between the northeast quarter and the northwest quarter as a partition fence.

On cross-examination the plaintiff said that defendant built his house on the southwest quarter after he had fenced his land; that after defendant purchased the Mead quarter he came to plaintiff and claimed the whole of the division fence between the northeast quarter and the northwest quarter, and wanted him to pay for one-half of it or to build the fence between the southeast quarter and the southwest quarter; that plaintiff then told defendant of his contract with Mead,·and refused to comply with defendant's request. Plaintiff stated that he paid Mead $15 for one-half of the fence between the northeast quarter and the northwest quarter; that this payment was made after Priddy had bought the northwest quarter

of Mead; that no part of this fence has been set off to plaintiff as his part thereof; that there was no agreement between Priddy and plaintiff about fencing or occupying their lands in common at the time plaintiff inclosed his land; that they did not occupy their lands in common; and that he never said anything to defendant about the agreement between Mead and plaintiff about the partition fence until the defendant wanted him to build the entire 160 rods between the two south quarters.

W. C. Mead and James Easterday also testified as witnesses for the plaintiff.   Other facts are stated in *Markin v. Priddy*, 39 Kas. 462, *et seq.*

*James J. Hitt,* and *Overmyer & Safford,* for plaintiff in error.

*Vance & Campbell,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: At the time of the alleged damages caused by defendant's cattle to the plaintiff's growing corn and grass, the plaintiff's and the defendant's farms were inclosed, but there was no partition or other fence between them: that is, there was no fence along the east line of the defendant's southwest corner—at least, no sufficient fence to turn stock. When the defendant turned his cattle loose in his southwest quarter, he knowingly permitted them to go upon the southeast quarter, being the farm of plaintiff, because there was no fence obstructing or preventing them.   The outside line fences of the southwest quarter prevented them from running at large, and naturally, on account of the absence of any fence between the southwest quarter and the southeast quarter, the cattle would wander from one quarter to the other; therefore, the defendant did not let his cattle run at large, because his land was not thrown out in the common.   Under these circumstances the plaintiff and defendant, being the owners of adjoining farms, had the same fenced in common.

The contrary view adopted in the original opinion grew out

of the declaration of the plaintiff, made upon the trial, that the farms were not fenced, or occupied in common. This was a conclusion of law, not a statement of fact; and upon this conclusion the former decision was founded. The evidence, however, shows that as the farms were inclosed by uniting the outside-line fences, in law the farms were fenced in common, and without a partition fence. Even if there was no contract or agreement made between the plaintiff and the defendant by which they were to occupy their farms in common, or fence in common, yet if, as a fact, their farms were inclosed by uniting the outside-line fences, and there was no partition fence between the farms, and each occupied and used his farm in severalty, their farms were fenced in common, as above stated, notwithstanding the legal opinion or conclusion of the plaintiff to the contrary. The facts which he testified to contradicted his conclusion of law; and the facts narrated by a witness are to control, not his legal conclusion thereon.

The case falls within the authority of *Baker v. Robbins*, 9 Kas. 303; therefore the syllabus and opinion heretofore rendered in this case, 39 Kas. 462, will be corrected in accordance with the views herein expressed.

The judgment of the superior court will be reversed, and the cause remanded with direction to the court to overrule the demurrer to the evidence.

All the Justices concurring.