HARVEY HARRISON, Respondent, *v.* J. N. McCLELLAN, WM. McCLELLAN and JOHN HAINES, Appellants.

(County Court, Otsego county, August, 1909.)

Trespass — Acts constituting trespass and liability therefor — Persons liable.

> Where the owners of a farm let it to a tenant to work for a share of the produce, each party to put on a certain number of cows and to divide the cost of keeping them and the amount received from sales of milk, the tenant to acquire no title to the cows put on by the landlord, the landlord and tenant are both liable for damages caused by the cows when trespassing on adjoining lands.

APPEAL from a judgment rendered in favor of plaintiff in a justice's court.

George Wholleben, for appellants.

W. Irving Bolton, for respondent.

KELLOGG, J.  This is an action to recover damages claimed to have been sustained by the plaintiff for the trespass upon his lands of the cattle of the defendants, whereby a large portion of plaintiff's field of corn was destroyed.

The justice before whom the case was tried rendered a judgment in favor of the plaintiff for damages and costs.

It is undisputed that the plaintiff and defendants McClellan were owners of adjoining farms, and that the McClellans had let their farm to the defendant Haines, for the term of one year, by the contract, in writing, which appears in evidence.  The lease provides that the first parties are to stock said farm with twenty-one cows and a bull, reserving the right to dispose of any of them after November 1, 1908, and replace with same number.  Party of the second part agrees to put on said farm eight good young cows, fresh in milk this spring.  Second party accepts the cows, but does not acquire any title to the same, and cannot dispose of any cows belonging to first parties.

It is also provided that one-half of all the products of the farm is to be divided equally, each party to pay one-half of all the expenses and taxes; all milk dividends to be made out one-half to each party; and each party to pay for one-half of grain and feed for team and cows, from March 1, 1908, to May 15, 1908.

The closing language of the lease assists materially in its construction so far as it relates to the legal duties and obligations of the several defendants to the plaintiff in this action.  It says: " We will sell the milk complete to A. and McK. if we can.  If not we are to raise calves and pigs.  In case we do not sell the skim milk, we are to raise calves and pigs, each party to pay one half of pigs, and when the calves and pigs are sold in the Fall, each to have one-half of the proceeds."

It may be fairly inferred from the evidence that a dyke or mill race formed a dividing line between the two farms. It clearly appears, however, not only from the evidence of the plaintiff, but from one of the defendants, that the exact line between the parties had never been established; that no steps were ever taken about dividing off the land pursuant to statute, and no agreement ever made for a division fence.

One of the defendants testified that the only fence he ever knew of was a board fence, which the plaintiff says he repaired. The plaintiff also constructed a barb wire fence about one-half the distance of the supposed line between the parties, for the purpose of keeping out the defendants' cattle. It is practically undisputed in the case that no division fence was maintained by either party, and that neither occupant nor owner had served a notice upon the other that he chose to let his land lay open.

The evidence establishes the fact that the cattle of the defendants crossed over from the defendants' land on to the lands of the plaintiff, through the so-called board fence, and did much damage to plaintiff's corn, by eating, destroying, breaking-down and trampling upon the same.

At common law, a tenant of a close was not obliged to fence against an adjoining one unless by force of prescription. Every person was bound to keep his own cattle within his own close, and he was answerable for all injuries which they did if they escaped from it, and went upon his neighbor's. 1 Cowen's Treatise, 292; 3 Black. Comm. 385; Stafford v. Ingersoll, 3 Hill, 38.

In this case there is no evidence that fence viewers had located or divided any fence between the lands, or that there had been any location or division of any fence made by the parties; in fact, the evidence is that neither of the parties had knowledge of any such fact. The defendants were, therefore, under their common law obligation to keep their cattle on their own lands. Angell v. Hill, 18 N. Y. Supp. 824.

Every man's land is, in the eye of the law, inclosed and set apart from another's, either by visible and material fences, or by an ideal invisible boundary; and, in either case, every entry or breach carries with it some damages for which com-

pensation can be obtained by action.   2 Waterman Trespass, § 873.

By common law, it was as unlawful for the beasts of a neighbor to cross the invisible boundary line as it would be to overleap or throw down the most substantial wall.   Cooley Torts (3d ed.), 684.

At common law, every person was bound, at his peril, to keep his cattle within his own premises; and, if he failed to do so, he was liable for their trespasses upon the lands of another, whether the lands trespassed upon were inclosed or not. Ingham Animals, 258; 2 Am. & Eng. Ency. of Law (2d ed.), 351; Angell v. Hill, 18 N. Y. Supp. 824; Phillips v. Covell, 79 Hun, 210; Buford v. Hautz, 133 U. S. 320.

The rule was not founded on any arbitrary regulation of the common law, but was an incident to the right of property.   It is a part of that principle which allows every man a right to enjoy his property free from molestation or interference by others.   It is simply the recognition of a natural right.   Bileu v. Paisley, 18 Ore. 47; Wood v. Snider, 187 N. Y. 28.

It is, therefore, the correct rule of law that, until a fence has been established by prescription, by agreement or by action of fence viewers, the parties remain under their common law rights and liabilities, which require each to keep his cattle at home or make good the damage they do their neighbors.

The liability for trespass arises out of a wrongful act or failure to perform the duty imposed upon a party so chargeable.   That duty, so far as relates to domestic animals, is to restrain them so as to prevent their going on the premises of another.   This duty is imperative.   Marsh v. Hand, 120 N. Y. 320.

The recovery against the defendants in this case was, therefore, supported and clearly in accordance with substantial justice, unless the relation of the defendants McClellan was so qualified by the lease with the defendant Haines as to relieve them from responsibility.   If this contention of the appellants is correct, then the motion for a non-suit against the defendants McClellan should have been granted.

28

But this case should be clearly distinguished from Van Slyke v. Snell, 6 Lans. 299, and Atwater v. Lowe, 39 Hun, 150, and cases cited.

It was therein held that the owner of cattle is not liable for the damages caused by them while trespassing upon the lands of others, when the cattle are in the possession and under the control of a tenant, to whom " both farm and cattle " had been leased for a term of years.    It seems, however, that the decision of the court might have been different if the cattle had been in the possession of an agister, as his possession is more of the nature of that of an agent or bailee. Smith, P. J., however, voted for affirmance solely upon the authority of Van Slyke v. Snell, *supra,* and seems to question the justice of that rule.    Atwater v. Lowe, 39 Hun, 152.

In the lease, however, between the defendants McClellan, and the defendant Haines, the former were to furnish twenty-one and the latter eight cows; the milk checks were to be divided as well as the products of the farm; each party to pay for one-half of the feed for the cows; and all expenses to be borne equally.

I do not coincide with the views of the respondent that the defendants were copartners, but have arrived at the conclusion that, as to the products of both the farm and the cows, the several defendants were tenants in common and were, therefore, liable to the plaintiff for damages for any wrongful and unlawful trespass of their cattle.

It also appears by the evidence in the case that one of the defendants McClellan had knowledge of the fact that the cattle were trespassing upon the premises of the plaintiff, and that they were doing damage to his corn.

The case of Lettis v. Horning, 67 Hun, 628, was an action where the contract provided that the defendant should have twenty cows then on said farm, one bull, etc.    One K. was to work the farm under the contract, and take good care of the cows and stock, the milk, butter and cheese to be divided between the parties.    K. took possession of the farm, of the twenty cows and of the bull.    It was held, " That under the contract between the defendant and K., the bull was not leased, but was in K.'s possession as bailee."    It was

also held, if under the contract the defendant and K. could be deemed tenants in common of the bull, the former was also liable. Lettis v. Horning, 67 Hun, 630; Sheldon v. Skinner, 4 Wend. 525; Oaks v. Spaulding, 40 Vt. 347.

Marsh v. Hand, 120 N. Y. 315, was a case somewhat similar to Lettis v. Horning *supra.* In that case, one H. was sued as the owner and C. as the party working the farm on shares and to whom, under the contract between the parties, the possession of a dangerous animal was given. In that case, in his opinion, Bradley, J. used the following language: " He, Cumber, as well as the Hands, had an interest in the use of the stock, and was liable for the injury resulting from the trespass upon the plaintiff's premises, but, inasmuch as the defendants Hand had neither parted with the title to the stock left by them upon the farm, nor rented it to Cumber, they were also liable for any trespass committed by such stock upon the lands of another. The relation of Cumber as the bailee, and his duties assumed in respect to it, did not have the effect to relieve them, who were the general owners, from liability." Marsh v. Hand, 120 N. Y. 315–320.

I have therefore reached the conclusion that this judgment should be affirmed, with costs.

Judgment affirmed, with costs.