[No. 9238. Department Two. July 3, 1911.]

THOMAS T. KOBAYASHI, *Respondent*, v. L. I. STRANGEWAY, *Appellant*.[1]

ANIMALS—PARTITION FENCES—TRESPASS. At common law a tenant was not bound to fence against the cattle of his neighbor, who was answerable for any trespass committed.

ANIMALS — BOUNDARY AND PARTITION FENCES — TRESPASS. The fence law, Rem. & Bal. Code, § 4977 *et seq.*, recognizing boundary and division fences, the latter to be jointly erected and maintained, requires an owner of inclosed lands to fence only · against stock lawfully at large, and not against stock in an adjoining inclosed field; and where the owner of stock in his own inclosure does not avail himself of the statutory provisions for the maintenance of a division fence, the common law rule applies, and he is liable for trespass by reason of the failure of the division fence to restrain his stock.

SAME—FENCES—STATUTORY PROVISIONS—CONSTRUCTION. The intent of the fence act of 1863, construed with reference to conditions then existing, was to require fencing against stock at large on the public domain, and not to change the common law rule as to fences dividing inclosed fields when not erected pursuant to the statute governing division fences.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered May 24, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for trespass. Affirmed.

[1]Reported in 116 Pac. 461.

*Lee C. Delle,* for appellant.

*Holden & Wheeler* and *F. A. Hatfield,* for respondent.

CROW, J.—Action by Thomas Kobayashi against L. I. Strangeway, to recover damages sustained by reason of defendant's cattle trespassing upon plaintiff's land and destroying his crops. The plaintiff alleged, that in the year 1909 he held as lessee certain lands in Yakima county upon which he was raising a crop of celery and onions; that about October 15, 1909, the defendant obtained a lease of adjoining lands for pasture; that both tracts were inclosed, but separated by a partition fence composed of widely separated posts, loosely set, and of light wire easily broken, insufficient to turn range cattle; that on October 15, 1909, the defendant turned about seventy-five head of range cattle onto his land; that on that date, and repeatedly thereafter until December, 1909, they broke through the partition fence at divers times and places, trespassed upon plaintiff's land, and destroyed his celery plants and onions, to his damage in the sum of $1,300; that the cattle were turned into defendant's inclosure without plaintiff's knowledge or consent, and while plaintiff was absent from Yakima county, and that defendant caused the partition fence to be repaired, but so carelessly and negligently as to leave it, to his knowledge, in a condition unfit to turn cattle. To this complaint a general demurrer was overruled. Thereupon the defendant answered, and upon trial a verdict for $950 was returned in plaintiff's favor, upon which judgment was entered. The defendant has appealed.

Appellant's first assignment is that the trial court erred in overruling his demurrer. The points raised by the demurrer were not affected by the evidence subsequently introduced, and the sufficiency of the complaint is properly before us for consideration. The substance of appellant's contention is that its allegations describing the partition fence failed to show it was a lawful fence under any section

of our fence law (Rem. & Bal. Code, title 31, § 4977 *et seq.*) ; that the fence law necessarily imposes upon respondent the burden of showing he had a lawful partition fence sufficient to exclude appellant's cattle and prevent them from trespassing upon his lands; and that, in the absence of allegation and proof of the maintenance of such a fence, he cannot recover. Sections 4977 and 4978 define lawful fences, and it must be conceded that neither by the allegations of his complaint nor by the evidence introduced has the respondent shown the partition fence met the requirements of these sections. Section 4980, referring to boundary fences, provides that, when they become partition fences by reason of an adjoining owner inclosing his lands, he shall pay to the former owner of the fence one-half of its value. Subsequent sections provide a procedure for the erection of partition fences, and payment of their cost by adjoining owners. Two classes of fences seem to be recognized: (1) boundary fences which separate private inclosed lands from public highways, from the public domain, or from uninclosed private lands; and (2) partition fences which separate private inclosures of adjoining proprietors. At common law a tenant was not obliged to fence his close against his neighbor unless by prescription, and every person was, at his peril, bound to keep his cattle within his own close, being answerable for damages resulting from their trespass upon other lands, whether the latter were inclosed or uninclosed. 2 Cyc. 392.

The question now before us is the extent to which our fencing statutes have abrogated, modified, or supplanted the common law rule. There is no question but that these statutes require the owner of inclosed lands to fence against cattle and stock lawfully at large upon public highways, the public domain, or uninclosed private lands. But do they require an owner of inclosed private lands to provide a partition fence which shall be a lawful fence as defined in §§ 4977 and 4978, *supra*, between his private inclosure and the adjoining private inclosure of his neighbor? In other words, is he

required to allege and show his maintenance of such a parti-
tion fence sufficient to exclude his neighbor's cattle, as a
condition precedent to the right to recover damages resulting
from their trespass?  It is conceded no partition fence has
been demanded, constructed, or maintained in the manner
provided by the statute.  This being true, we conclude the
common law rule applies as between the owners of the adjoin-
ing inclosures, and that its obligations are imposed upon ap-
pellant, requiring him to restrain his cattle on his own land.
His cattle were not upon the public highway, the public do-
main, or any uninclosed private land.  On the contrary, they
were turned into appellant's inclosure at a time when no
lawful partition fence had been constructed or maintained be-
tween his inclosure and that of the respondent.  In this state,
parties owning adjoining inclosures may secure the benefit of
lawful partition fences, and apportion their cost, by availing
themselves of the procedure announced in the fencing statute.
If no lawful partition fence has thus been obtained or main-
tained, and one of the parties sees fit to turn his cattle into
his own inclosure without first availing himself of the benefit
of such statutory procedure, he must be held to the common
law obligation of keeping his cattle upon his own premises
and liable for damages resulting from their trespass upon
the inclosure of his neighbor.  Under conditions and statutes
quite similar, the supreme court of Indiana, in *Myers v. Dodd*,
9 Ind. 290, 68 Am. Dec. 624, said:

"We have a statute concerning enclosures, trespassing
animals, and partition fences (1 R. S. p. 292,) the first sec-
tion of which defines a lawful fence to be such as good hus-
bandmen generally keep.  The second section provides that
if any domestic animal break into an enclosure, the person
injured thereby shall recover the amount of damage done, if
it shall appear that the fence through which the animal
broke was lawful; but not otherwise.  Partition fences are
to be equally maintained by both parties.  If either party
shall fail to contribute his proportion, the other may, upon
notice, have the requisite amount assessed; and if upon notice

of the assessment he shall still fail, the other may make the repairs, and recover from him the amount he should have contributed, with 10 per cent damages: 1 R. S. *sup.* §§ 15, 16, 17. Another statute provides that the board of commissioners of each county by an order to be entered upon their records, shall direct what kind of animals shall be allowed to pasture or run at large upon the unenclosed lands or public common, within the bounds of any township in their respective counties: 1 R. S. p. 102. . . The common law rule, in the absence of any statute controlling it, is that the owner of cattle is bound to confine them upon his own lands. *Williams v. New Albany and Salem Railroad Company,* 5 Ind. R. 111; *Lafayette and Indianapolis Railroad Company v. Shriner,* 6 Id. 141; *Page v. Hollingsworth, supra* (2). We think there is no statute controlling the common law rule, so far as this case is concerned. Both parties were equally bound to maintain the partition fence. Either might have repaired it, and enforced contribution from the other; but neither having done so, they stood upon their respective common law rights and obligations. This required Myers to keep his cattle at home. Having violated that rule, he was liable for the trespass committed by them."

See, also, *Baker v. Robbins,* 9 Kan. 303; *De Mers v. Rohan,* 126 Iowa 488, 102 N. W. 413; *O'Riley v. Diss,* 41 Mo. App. 184, 97 Am. Dec. 268; *Harrison v. McClellan,* 64 Misc. Rep. 430, 118 N. Y. Supp. 573.

There is no showing here that either party has at any time seen fit to avail himself of the provisions and procedure of our statutes relative to a lawful partition fence. On the contrary, appellant turned cattle into his own inclosure at the time, knowing it was not separated from respondent's inclosure by any lawful fence sufficient to turn stock. He is in no position to insist that respondent has neglected any statutory duty in the matter of securing a sufficient partition fence. If, for his own protection, respondent would be required to fence at all, he would only be required to fence against cattle running at large upon public highways, the public domain, or uninclosed private lands. If appellant's cattle turned by him into his own inclosure broke

through an insufficient partition fence and trespassed upon respondent's inclosed lands, appellant must be held liable for all damages thereby resulting to respondent. The inclosing of two tracts of land by one outside or boundary fence is not, under our statute, a license to the owner of either to so dispose of his cattle that they may at will trespass and graze upon the land of the other, within the same general inclosure.

Our fencing statute was originally adopted in 1863 when Washington was a territory. It must be construed with reference to conditions which then prevailed and called it into existence. It is common knowledge that, at the times it was originally enacted and subsequently amended, the territory was sparsely settled; that its public domain was broad and extensive; that private property was less extensive; that public lands were generally used as a vast range for cattle and other stock; that it was more feasible for owners of private property to fence out and exclude cattle pastured upon the public domain, than it was for the owners of such cattle to comply with the common law rule of preventing them from trespassing upon uninclosed private lands. The evident purpose of the statute was, (1) to compel owners of private property to protect their lands by lawful boundary fences against stock and cattle ranging upon the public domain; and (2) to provide that owners of private lands might obtain the mutual benefit of partition fences between their adjoining inclosures at their joint expense, by availing themselves of the procedure of the statute enacted for that purpose. The purpose of this legislation was not to change the common law rule as to the relative duties of adjoining inclosures separated from the public domain by outside or boundary fences, unless they first availed themselves of the procedure and benefits of the statute authorizing them to secure lawful partition fences at their joint expense, for the purpose of separating their private inclosures and protect-

ing the one from the other. The complaint stated a cause of action, and the demurrer was properly overruled.

Appellant further contends the evidence was insufficient to sustain the verdict for the full amount of damages awarded. We have carefully examined all the evidence and conclude it is sufficient to support the verdict. The judgment is affirmed.

DUNBAR, C. J., CHADWICK, and MORRIS, JJ., concur.