[No. 10613.   Department One.   January 20, 1913.]

CHARLES HUBERT *et al., Respondents,* v. CONNELL NORTHERN RAILWAY COMPANY, *Appellant.*[1]

TRESPASS—COMMON INCLOSURE—THROWING OPEN WITHOUT CONSENT—LIABILITY FOR TRESPASSING STOCK. Where a railroad acquired a right of way through inclosed lands, and took down the fences across its right of way, which it failed to fence up, thereby allowing stock to enter and trespass upon the lands formerly inclosed, it is liable for the damages, on the principle that an owner having an inclosure common with another cannot throw the close open without the other's consent; since no man shall use his own property in such manner as to injure that of another (PARKER and MOUNT, JJ., dissenting).

Appeal from a judgment of the superior court for Adams county, Holcomb, J., entered March 18, 1912, upon findings in favor of the plaintiffs, in an action for trespass. Affirmed.

[1]Reported in 129 Pac. 105.

*Cannon, Ferris & Swan* and *John M. Cannon,* for appellant.

*John Truax,* for respondents.

CHADWICK, J.—Appellant acquired a right of way over certain lands of respondents. These lands adjoined a public road. When the company came to build its line of railway, it took down the fences across its right of way. They remained down during the whole period of construction except when replaced by respondents. Cattle wandered from the highway onto the right of way, and from it, at will over respondents' lands, to their damage in the sum of $800, for which judgment was rendered in the court below.

Respondents relied upon two propositions of law to sustain their case; that is, that it was the duty of the appellant to so use its right of way as not to injure the land of another; and the act of 1907 entitled, "An act compelling railroads to fence their rights of way, and to protect the owners of stock injured by moving railway trains, declaring a law of negligence with regard to stock injured by railway trains." The court below was the more impressed with the first proposition. Appellant has brought its case here, insisting that neither of these positions is tenable; that it was the rule at common law, and is now in this state, that the owner of land is not liable for damage done by trespassing cattle coming onto his land and escaping to the land of another; and further, that the law of 1907, defining the duty of a railway company to fence and put in cattle guards, refers only to the liability of the company to answer for damages to stock which may be killed or injured upon its right of way. To sustain its contentions, appellant cites the following cases: *Gowan v. St. Paul etc. R. Co.,* 25 Minn. 328; *Snyder v. Pennsylvania R. Co.,* 205 Pa. 619, 55 Atl. 778; *Bear v. Chicago etc. R. Co.,* 141 Fed. 25; *Frisch v. Chicago Great Western R. Co.,* 95 Minn. 398, 104 N. W. 228.

We are inclined to believe that the judgment of the court below can be made to rest upon the common law:

"Every man's land is, in the eye of the law, enclosed and set apart from his neighbor's; and that either by a visible and material fence, as one field is divided from another by a hedge, or by an ideal, invisible boundary, existing only in the contemplation of law, as when one man's land adjoins to another's in the same field. And every such entry or breach of a man's close carries necessarily along with it some damage or other; for, if no other special loss can be assigned, yet still the words of the writ itself specify one general damage, viz., the treading down and bruising his herbage. . . . Thus, if a meadow be divided annually among the parishioners by lot, then, after each person's several portion is allotted, they may be respectively capable of maintaining an action for the breach of their several closes." 3 Blackstone (Lewis ed.), 209, 210.

It is also an established principle of the common law that no man shall use his own property in such manner as to injure that of another. This principle finds expression in the maxim *sic utere tuo ut alienum non laedas.* As this court and others have construed the fence laws, it may be admitted that a railroad company is not liable under the statute for the damage done by trespassing cattle which wander from their uninclosed right of way onto another's land. Those decisions have no application here; for if mine and my neighbor's field are in one inclosure, neither is liable to the other for damage done by trespassing cattle which wander from one ownership to another. But if either myself or my neighbor, in wilful disregard of the rights of the other, break the outer inclosure and leave it open so that cattle may wander at will over the premises belonging to both of us, the offender should be held to the rule that no man may so use his property as to injure that of another. It is so here. The statute does not compel the company to fence, but by so doing it may save itself certain presumptions of negligence and the hardship of certain rules of evidence. On the other hand,

the statute does not exempt a company from the established rules of law, therefore it cannot, having an inclosure common with another (and that is the most favorable position the company assume in this case), throw the common close open to the public highway. The case of *Baker v. Robbins*, 9 Kan. 303, is illustrative:

"Baker and Robbins owned adjoining farms, fenced in common—no partition fence having been made between them, though they used their farms in severalty. Baker turned a herd of cattle rightfully upon his own premises, without the consent of Robbins, however, and knowingly permitted them to wander upon the premises of Robbins and do great injury to a crop of wheat. Robbins sued Baker, and the only question for us to determine is, whether Baker is liable for said injury. We think he is. We suppose that it is settled beyond all controversy, that at common law the owner of cattle was required to take care of them, and not allow them to stray or wander upon the land of another, whether such land was fenced or not; and if he did allow his cattle to so stray or wander he was liable for all injuries they might commit."

Now, if a common owner cannot permit his own cattle to wander beyond his own boundary whether fenced or not, it would seem to follow that, if one of two using the same inclosure opens the close so as to invite stock from the highway or range, and they do damage within the common close, the one offending should be liable. For although the stock is not his and are in a sense trespassers, they are nevertheless within the inclosure at his implied license; and as against his neighbor, the rule of the common law should apply as if the stock were indeed his own. If, for its own purposes or because of its necessities, a railroad company breaks the continuity of the fence so that its common owner is damaged, it is liable; for the proximate cause is not the trespass of wandering stock, but the wilful disregard of the right of another by the party charged.

Judgment affirmed.

CROW, C. J., and GOSE, J., concur.

PARKER, J. (dissenting)—I dissent. The doctrine announced by the majority opinion will require an owner of land which at some time happens to be inclosed with land of another adjoining, to forever maintain the portion of the fence bordering his land or to build and forever maintain a fence along the entire common boundary line of the tracts. In other words, by this doctrine one owner is required to forever protect the land of an adjoining owner by fence simply because his land adjoins and an existing fence on three sides of each tract happens to inclose both tracts together. *Baker v. Robbins* quoted in the opinion is wholly foreign to the question here involved, in that the cattle were there in charge of Baker and he was responsible for their care. The case would have been exactly the same in principle had the farms been miles apart. This is not a question of the use of appellant's land, but of who shall be compelled to fence respondent's land against trespassers to whom appellant is a stranger.

MOUNT, J., concurs with PARKER, J.