[No. 19461.   Department One.   January 8, 1926.]

R. M. EDMONDS, *Appellant*, v. LONGVIEW, PORTLAND & NORTHERN RAILWAY COMPANY, *Respondent.*[1]

[1] TRIAL (31)—RECEPTION OF EVIDENCE—REOPENING CASE FOR FURTHER EVIDENCE. In an action for negligence in the manner of constructing a railway across plaintiff's holdings, it is an abuse of discretion to deny an offer of further proof of negligence, upon the trial court's indicating that it would grant a non-suit for want thereof after plaintiff rested, where it appeared that defendant so conducted its operations as to deny the plaintiff a right of access reserved and contemplated by the decree of condemnation; plaintiff's counsel having been of the opinion that such further evidence was not necessary in view of such denial of plaintiff's rights.

[2] RAILROADS (32)—CROSSING PRIVATE LANDS—FAILURE TO FENCE—DAMAGES. A railroad company is liable in damages for the negligent obstruction of an easement, which became effective as soon as the company occupied the land for the purpose of constructing its road, notwithstanding it had a reasonable time

[1]Reported in 242 Pac. 19.

to construct contemplated fences, where such negligence was in the nature of wilful disregard of the rights of the party obstructed.

Appeal from a judgment of the superior court for Cowlitz county, Kirby, J., entered March 9, 1925, dismissing, on the merits, upon an action in tort, tried to the court.  Reversed.

*W. H. Sibbald,* for appellant.

*Fisk & McCarthy* and *C. E. Lombardi,* for respondent.

HOLCOMB, J.—This is an action to recover damages in the sum of $500, arising out of the alleged negligent and careless manner in which respondent conducted the building of a railway across the lands occupied by appellant.  The complaint in the action was verified by appellant October 29, 1924, and the case was brought on for trial before the court and a jury on February 25, 1925.  At the trial, appellant had introduced his evidence and rested, when respondent moved for a nonsuit which was granted, and the action dismissed. The motion was granted expressly upon the ground that appellant had not proven negligence in respondent's method of construction.  From the judgment of dismissal, this appeal is brought.

Appellant operated a dairy upon lands leased from another.  When respondent wished to build its railway across the premises, condemnation proceedings were commenced, which were finally adjusted by agreement between the landowner and respondent, a decree being entered in conformity with the agreement, a paragraph of which is as follows:

"At station 484 plus 50, on the line of the company as at present surveyed, the company will provide and maintain a subgrade stock passage with a seven-foot clearance headway for the use of the land owners; and

at station 486 plus 00, the company will provide and maintain a grade crossing with a five per cent approach with cattle gates, and so fenced that stock and vehicles may cross the tracks without opening gates.''

Another paragraph of the decree provides:

''The railway grade or embankment of the company at the point where the company's right-of-way traverses the land of the land owners will be made of sand and gravel placed thereon by a suction dredge. No ditches or other breaks in the surface of the earth on either side of the embankment will be left open after the completion of the embankment. No sand, gravel, muck, silt, nor water shall be permitted to run upon the land of the landowners during the construction of the railroad.''

Upon the decision by the trial judge that the nonsuit would be granted, counsel for appellant, although he had not felt it incumbent upon appellant so to do, made a further offer of proof to the effect that it would have been an easy matter for the railway company to have placed a gate in the sides of the lane where the grade crossing was to be installed, and to have opened and closed the same so that cattle belonging to appellant would have been confined to the lane without being permitted to wander through the fields of appellant; and further, that, by a small expenditure of effort and material, it would have been practical to have maintained an approach over the pipeline used in depositing the material for the grade, instead of allowing the crossing at one time installed over the pipeline to be taken up within a few days; and, further, offered to show that the pipeline and the grade were on the premises approximately not to exceed thirty days prior to the commencement of this action; the purpose of the offers being to make clear the damages and negligence on the part of respondent company, and the possibility on the part of respondent

company of preventing the trouble by a slight exercise of caution and industry on its part.

The above offers were denied by the court, which denial is complained of by appellant, and constitutes appellant's first assignment of errors.

The stock crossings were not put in place until a few days before the trial occurred.

The evidence as to damages, aggregating something more than $300, was based substantially upon these facts:

The decree of condemnation which contained the provisions for the crossing and subgrade passway was filed August 13, 1923. Respondent did not occupy the premises acquired for the right-of-way until about June 1, 1924. During that period, it made no attempt to prepare, by fencing, gates, or otherwise, for its occupation of the land. The right-of-way crossed at right angles a lane leading from the barn of appellant to the pasture where he pastured his 31 head of cows. The land on which the grade crossing was to be constructed was along the property line of the land. The subgrade cattle passway was some distance inside the premises to the south. When respondent entered the premises, it threw down the fences, and, except in a few instances, left them down. Appellant built a gate across the lane just above the right-of-way to keep the cattle in his pasture, but this shut them off from water. The cattle got to wandering into the adjoining fields, and it was necessary to have men attend them. The lack of water and of pasture caused the milk supply to decrease to the extent of about one-half. The necessary attention by appellant and his men to keep the cattle out of the fields, and in the pastures or barn, caused him to lose about 50 cents per day for four and one-half months. During the construction work, the dredging was done

by laying pipes about 18 inches in diameter on trestle work six to ten feet high, and forcing water and sand through the pipe, discharging the same at certain intervals to make the grade. Over the trestle work, the soft sandy grade, and large pipes, appellant was obliged to drive his cattle. A temporary plank crossing was put in by respondent at one time, but, it being necessary to replace the pipes, the crossing was very soon removed and never replaced. For ten days the cattle were unable to cross the right-of-way. During that time they were fed in the barn.

[1] Since by the decree under which respondent obtained title to the land, appellant's lessor reserved an easement for crossings at the places mentioned in the decree, and there was no provision in the decree as to how respondent should conduct its operations other than, as indicated, that the owner and occupant of the land over which the right-of-way was appropriated reserved the crossings mentioned, we think there is no doubt that respondent should have so conducted its operations as not to deny the occupant of the adjoining lands access to the portions thereof on each side of the right-of-way as contemplated by the decree. We conclude, therefore, that the court abused its discretion in denying appellant the right, when the court had indicated its decision to grant the nonsuit on the ground of no showing of negligence, to make the proofs offered before the case was finally dismissed.

[2] Respondent contends, however, that this not being a "stock-killing" case, governed by the statute and our decisions as to the fencing of rights-of-way against stock, and, considering the agreement as a whole under which the decree of condemnation was entered, it is clear that the grade and subgrade crossings were to be installed after the completion of

respondent's roadbed, and that therefore no cause of action exists against respondent.

Upon this question, appellant contends that, notwithstanding the recitals or deficiencies of the decree, respondent should be compelled to pay damages in any event. It is argued that, in such a case the consideration of the decree being eliminated, this case is governed by *Hubert v. Connell Northern R. Co.,* 71 Wash. 567, 129 Pac. 105, 43 L. R. A. (N. S.) 447, a case of damages by trespassing stock gaining egress through an unenclosed right-of-way.

On the contrary, respondent contends, that in a case such as this, the action is governed by *Kobayashi v. Strangeway,* 64 Wash. 36, 116 Pac. 461. In the last cited case, this court held that,

"At common law, a tenant was not obliged to fence his close against his neighbors unless by prescription, and every person was, at his peril, bound to keep his cattle within his own close, being answerable for damages resulting from their trespass upon other lands, whether the latter were enclosed or unenclosed."

Respondent seems to lose sight of the fact that, in this instance, it had agreed to fence the right-of-way. It is true no time is set for the performance of the decree based on the agreement; respondent, therefore, contending that it was not to be done until the construction of the roadbed was completed, or within a reasonable time thereafter. Respondent also loses sight of the fact that the easement reserved by the landowner for crossings to the different portions of his land over and under respondent's right-of-way were easements which, so far as the agreement is to the contrary, took effect immediately upon the occupation of the land for a right-of-way by respondent. The condemnation decree indicates that respondent was required to fence the right-of-way. Of course, it had a

reasonable time in which to do so. But this action not being one where damages are sought for injury or destruction of stock getting upon the right-of-way by reason of its unfenced condition, but for injuries to stock and the owner of the stock by reason of the negligent failure of respondent to comply with the terms of the easement reserved by the landowner, and his tenant, it does not fall exactly within the rule of the case of *Hubert v. Connell Northern R. Co., supra,* relied upon by appellant, nor within that of *Kobayashi v. Strangeway, supra,* relied upon by respondent. Differentiating this case from the case relied upon by respondent, is the fact that respondent agreed to fence the close; respondent also agreed to provide passage across the right-of-way at two places. It is immaterial what the method of construction was as argued by respondent, whether by dredge or by any other means, since, whenever respondent occupied the right-of-way and began its operations, the easement to which appellant was entitled became effective. The easement being thoroughly obstructed or denied to appellant, in our opinion gives rise to an action for damages for such negligence upon one of the general principles stated in the *Hubert* case, *supra,* of the "Wilfull disregard of the right of another by the party charged."

Upon these considerations, the judgment of the trial court is reversed and the cause remanded for new trial in conformity herewith.

TOLMAN, C. J., ASKREN, MAIN, and FULLERTON, JJ., concur.