[No. 1215-2.   Division Two.   February 15, 1974.]

ROGER MISTEREK et al., *Respondents*, v. WASHINGTON MINERAL PRODUCTS, INC., *Appellant*.

*Grant Armstrong* (of *Murray, Armstrong & Vander-Stoep*), for appellant.

*Wayne Roethler* and *Phil Hickey* (of *Roethler & McCulloch*) (*Raymond J. Conboy, Dan O'Leary,* and *Pozzi, Wilson & Aitchison,* of counsel), for respondents.

PEARSON, C.J.—In accordance with a jury verdict, plaintiffs Roger and Carolyn Misterek were granted a judgment against defendants Washington Mineral Products, Inc., a Washington corporation, and Delmar Swatsenbarg, for injuries and damages sustained by them when a car in which they were passengers swerved to avoid a horse owned by defendant Swatsenbarg. The accident occurred in Pacific County on a public highway in the vicinity of vacant land owned by the defendant corporation. Washington Mineral Products, Inc. (WMP) appeals the judgment; Swatsenbarg does not appeal.

There was evidence which, if believed, would have established that one Don Hadlund, a stockholder, director and officer of WMP, had orally authorized Swatsenbarg to pasture his horse on the company's pastureland, if he would maintain the fences in repair. The fences were not so maintained and the horse escaped. The accident occurred at night, when an automobile driven by Don Eisele and occupied by Mrs. Eisele and the plaintiffs, swerved to avoid the horse and ended up in the ditch.

Pacific County had by proper ordinance designated the area as a stock-restricted area, pursuant to the "herd law," RCW 16.24.010, *et seq.* At trial, plaintiffs advanced the theories that the defendant Washington Mineral Products was upon the facts subject to the herd law, and alternatively, that absent liability under the herd law, the company was guilty of a breach of a common-law duty to act prudently with respect to conditions on its land.

The trial court concluded and instructed the jury that *defendant corporation was not subject to the herd law,* since it neither owned nor was "in control" of the horse, within the meaning of that statute.[1] However, the trial court allowed the jury, by instruction, to determine WMP's liability on the common-law theory. The instruction, set forth in the margin,[2] is the principal assignment of error on appeal. WMP contends that the instruction was erroneous, and that having determined WMP was not subject to the herd law, the trial court should have granted its motion to dismiss plaintiff's cause of action.

We think that the trial court correctly ruled that the herd law did not apply as a basis of liability against WMP. While the trial court's analysis—that WMP's bare right of control of the pasture was not the equivalent of control of the horse within the statutory meaning of that term—is

---

[1]RCW 16.24.065 provides:

"No person owning or in control of any livestock shall wilfully or negligently allow such livestock to run at large in any stock restricted area, nor shall any person owning or in control of any livestock allow such livestock to wander or stray upon the right-of-way of any public highway lying within a stock restricted area when not in the charge of some person."

[2]Instruction 12 stated:

"You are instructed that there is no evidence that the defendant, Washington Mineral Products, Inc., owned or was in control of the horses involved in this case. Consequently, you are instructed that the said defendant, Washington Mineral Products, Inc., has not violated the 'herd' law in evidence as Plaintiffs' Exhibit 1. However, the owner of land within a stock-restricted area has a general duty to act as a reasonable prudent man with respect to his land to avoid injury to others."

supportable, a more direct statutory basis exists for such a conclusion.

RCW 16.13.010 provides, in part: "It shall be unlawful for the *owner* of any horse, mule or ass to permit such animal to run at large and not under the care of a herder . . ." (Italics ours.)

This comparatively recent statute (Laws of 1951, ch. 31) has the effect of removing horses from the category of "any livestock" as that term is used in the herd law. *Bly v. McAllister,* 58 Wn.2d 709, 364 P.2d 500 (1961).

RCW 16.13.010 thus limits any statutory basis of liability for damage caused by horses at large to the *owner* thereof. On the other hand, its application is not limited to "stock restricted areas" as is the effect of the herd law. Clearly WMP had no ownership interest in Swatsenbarg's horses. Where no such interest is present, the statute is unavailable as a basis of establishing either criminal or civil liability.

We turn now to a consideration of the common-law theory of WMP's liability to plaintiff. We will assume for the sake of this analysis that because of the length of time Swatsenbarg's horses had been pastured on WMP's land (some 4 years) that the latter knew of their presence and should have known that the fences were not in repair. These assumptions are supported by testimony that a salaried employee of WMP resided in a home located on this land and knew that Swatsenbarg pastured his horses there and was required to maintain the fence.

Plaintiff contends that the common-law rule of liability as enunciated in section 365 of Restatement (Second) of Torts (1965)[3] should provide a theory of liability against

[3]Restatement (Second) of Torts (1965) at section 365 states: "A possessor of land is subject to liability to others outside of the land for physical harm caused by the disrepair of a structure or other artificial condition thereon, if the exercise of reasonable care by the possessor or by any person to whom he entrusts the maintenance and repair thereof

"(a)   would have disclosed the disrepair and the unreasonable risk involved therein, and

"(b)   would have made it reasonably safe by repair or otherwise."

WMP, and that the court's instruction (footnote 2) is consonant with that theory.

On the other hand, defendant urges that the common law has been preempted by the animal control statutes, and there is no liability for damage done by an animal unless it is allowed under the statutes. We agree.

The history of the animal control statutes is fully discussed in *Bly v. McAllister, supra. Bly* points out that in a series of statutes, the legislature has undertaken a comprehensive regulatory scheme pertaining to farm animals running at large. Those statutes delineate in detail the circumstances under which dogs, horses, mules, asses, stallions, jacks, livestock, sheep, swine, and goats may be at large or unattended, and designating those specific persons who are subject to criminal penalties where the statutes are violated. *See generally* RCW Title 16.

Because of this comprehensive legislative regulatory scheme, and in view of the uncertainties involved in the common law of "animals at large" in the western states historically (as amply examined in *Bly v. McAllister, supra*), we conclude that common-law rules have been completely preempted by legislation. *See State ex rel. Madden v. PUD 1*, 83 Wn.2d 219, 517 P.2d 585 (1973); *Baum v. Murray*, 23 Wn.2d 890, 162 P.2d 801 (1945).

In *State ex rel. Madden v. PUD 1, supra* at 221-22, the Supreme Court stated two general rules for determining whether or not a statute supplants and thereby excludes the existing common law. If the statute (1) "is clearly designed as a substitute for the prior common law . . ." or (2) if the provisions of the later statute "are so inconsistent with and repugnant to the prior common law that both cannot simultaneously be in force . . ." the statute is deemed to have abrogated the common law.

Both of these rules dictate against plaintiff's contention that common-law rules of landowner general liability should apply. In the first place, as pointed out in *Bly,* prior to passage of the early fencing statutes, the open range concepts in the western United States suggest a total ab-

sence of common-law liability for domestic animals at large, even as to the animal owners. The first fencing statutes reversed the common-law burden present in other areas of the country and required property owners to fence out their neighbors' trespassing livestock. *See Kobayashi v. Strangeway,* 64 Wash. 36, 116 P. 461 (1911). The present comprehensive domestic animal at large statutes are clearly designed to supplant the early common-law rule. Furthermore, it would be totally repugnant to the statutory scheme of imposing liability upon *owners* of horses running at large, were we to impose a common-law duty upon persons other than the owners or those in direct charge of them.

Most persuasive in this connection is the reasoning advanced by the Court of Appeals of Illinois in *Heyen v. Willis,* 94 Ill. App. 2d 290, 236 N.E.2d 580 (1968). As said in that case at page 296:

> Plaintiff finally asks this court to lay aside any hypothetical or real obstacle caused by considering this case as a livestock at large problem asserting that the case resolves itself around the duty of the owner of leased premises to strangers to the lease. He states that such duty does exist where premises are leased with a known defective condition or where the owner agrees to repair, [citing cases]. There is no question that this is the law of Illinois as represented by these and many other cases. However, we cannot, as plaintiff suggests, lay aside any consideration that this case is a livestock at large problem for plainly it is a livestock at large problem and cannot be considered as anything else. The likelihood of injury or damage from estrays, and the attendant duty to use care to prevent such injury or damage, lies not in the place where animals may be kept but in their propensity to roam, their wanderlust. Thus, the duty to guard against injury or damage by estrays is cast by law upon the owner or keeper of the animals, and liability for injury or damage caused by them must be predicated upon the Animal Act. No common-law duty exists upon the part of the landowners in this case and the question of their negligence in placing their premises in the possession of Lyons for the grazing of cattle should not be submitted to a jury.

Similarly, this case is a "horses at large" problem which must be resolved in the context of the preemptive statutory scheme with respect to the regulation of livestock animals. The general common law as to owners of land has no application.

Judgment reversed, with instructions to dismiss the action as to WMP.

PETRIE and ARMSTRONG, JJ., concur.

Petition for rehearing denied March 11, 1974.

Review granted by Supreme Court May 21, 1974.